ELIJAH E. DICKINSON *vs.* SEYMOUR D. TALMAGE.

Hampshire. Nov. 25, 1884. — Jan. 24, 1885. W. ALLEN, C. ALLEN, & COLBURN, JJ., absent.

A., his minor son, and B. entered into a written agreement, by the terms of which A., with the assent of his son, in consideration of the covenants of B., agreed that the son should work for B. from the date of the agreement until the son should arrive at full age; and B. agreed to pay A. a certain sum monthly during the term, in full compensation for the services of the son, and, in consideration thereof, A. bound himself in a certain sum to hold B. harmless from all obligations entered into by signing an indenture of apprenticeship, executed by the same parties on the same day, binding the son to B.; and it was further agreed that all compensation shall be paid to the son. *Held,* that A. could maintain an action against B. for a breach of the agreement; and that the provisions of the indenture of apprenticeship could not be imported into the agreement so as to affect B.'s liability upon his covenants therein.

If A., his minor son, whom he has emancipated, and B. execute a written agreement for the employment of the son during his minority by B., the emancipation of the son is no defence to an action by A. against B. on the agreements made by B. with A.

In an action by A. against B., for the breach of a written agreement, executed by A., his minor son, and B., for the employment of the son during his minority by B., the measure of damages includes the reasonable expenses incurred by A. in obtaining new employment for his son after the breach, the wages earned by the son during his minority in such new employment being allowed in diminution of damages.

CONTRACT for breach of an instrument in writing, dated July 7, 1880, signed by the parties, and purporting to be "by and between Elijah E. Dickinson and his son, Louis H. Dickinson, and Seymour D. Talmage," and containing the following agreements :

"That the said Elijah E. Dickinson, with the assent of his said son, Louis H. Dickinson, in consideration of the covenants and undertakings of the said Talmage, agrees that his said son, now a minor of eighteen years of age, shall work for the said Talmage on his farm, or on such other employment as he shall have occasion for him to do, from the date hereof until the time the said Louis shall arrive at the age of twenty-one years, which will be on the first day of October, in the year 1882.

"And the said Seymour D. Talmage agrees to pay the said Dickinson the sum of thirteen dollars per month for the first year, and fourteen dollars per month for the remainder of the term, in full compensation for the services of the said Louis H.,

and in consideration of which the said Elijah E. Dickinson binds himself in the sum of three hundred dollars to hold free and harmless the said Seymour D. Talmage from all obligations entered into by signing an indenture of even date herewith binding the said Louis H. Dickinson under the provision of Oliver Smith's will.

"And it is further agreed by the said parties, that this contract may be dissolved if either party shall become dissatisfied at any time by agreement of parties. And, in the event of a dissolution of this contract, it is agreed the compensation shall be at the rate of sixteen dollars per month for the summer season, and ten dollars per month for the winter season, for the first year, and at the same rate the remainder of the term. And it is further agreed that all compensation shall be paid to the said Louis H. Dickinson."

Answer: 1. A general denial. 2. Failure to perform the agreement declared on by the plaintiff and his son, and a dissolution of the contract by consent. 3. Payment of all sums due under the contract.

Trial in the Superior Court, without a jury, before *Rockwell*, J., who allowed a bill of exceptions in substance as follows:

At the time of the execution of the agreement declared on, the plaintiff, his son, and the defendant executed another instrument in writing, being the one therein referred to, dated July 7, 1880, and containing the following provisions:

"That the said Dickinson, in consideration of the covenants and undertakings of the said Talmage, hereafter mentioned, with the consent of his son, Louis H., a minor of the age of eighteen years, signified by his signing this instrument, doth hereby place, bind, and indent the said minor to the said Talmage, to learn the art, trade, and business of a farmer, and him, after the manner of an apprentice, to serve from the day of date hereof, until the first day of October which will be in the year 1882, when the said minor will arrive at the age of twenty-one years, and the said Dickinson, for himself and his executors and administrators, doth covenant hereby with the said Talmage, that, for and during the term aforesaid, the said minor shall well and faithfully serve him, and give and devote to him his whole time and labor; that he shall not indulge in the use of

ardent spirits, profane language, or in gaming or other unlawful sports; that he shall not wilfully injure or destroy the property of his said master, but shall conduct himself in a sober, temperate, honest, and industrious manner.

"And the said Talmage, for himself and his executors and administrators, doth hereby covenant with the said Dickinson that he will faithfully instruct the said Louis H. in the art and business aforesaid, so far as he may show himself capable of learning the same; that he will, during the term aforesaid, constantly supply the said minor with good, suitable, and sufficient food, clothing, and lodging, and all other things necessary in sickness and in health; that he will grant him during the term aforesaid the privilege of attending school a sufficient time for him to learn to read and write and cipher, and whatever else is requisite for what is usually called 'a good common school education;' and that he will, as far as in him lies, train him up in habits of frugality, industry, temperance, and virtue; — and that he will also pay to the said minor, on his coming of age, the sum of

"And the said Dickinson and the said Talmage do further mutually covenant and engage, each with the other, that the said apprentice may have and enjoy all the rights and privileges, and that he shall perform all the duties and observe all the regulations provided in the last will and testament of the late Oliver Smith, Esq., in relation to 'Indigent Boys' selected as beneficiaries in pursuance thereof; * and further bind themselves each to the other, in the penal sum of two hundred dollars, for the faithful performance by each to the other of all the obligations above assumed by them respectively; and that each shall hold the other harmless from any loss or damage by reason of any failure on his part to comply with the terms of this indenture.

"And the said apprentice, Louis H. Dickinson, does hereby signify his assent to the terms of this indenture, and promises faithfully to keep and perform all things above provided to be kept or performed by him."

---

* Nothing appeared in the papers in this case to show what were the provisions of this will. It is presumed that the same will is referred to which was before the court in the case of *Smith Charities* v. *Northampton,* 10 Allen, 498.

It appeared in evidence that the plaintiff had agreed with his son, at the time the son was fourteen years of age, that the latter should after that time receive and be entitled to all wages due him for his labor performed by him after that time, which agreement had not been rescinded.

· There was also evidence tending to 'show that the defendant paid to the plaintiff's son, for his labor after July 7, 1880, to January 3, 1882, at which time the son ceased to labor for the defendant, the sum of $224, as the amount agreed to be due him at that time for such labor; that the son had an opportunity to go to work for one Shaw in Belchertown for the sum of $12 per month from January 3, 1882, to the first day of April following, and for the sum of $17 per month from said first day of April to the first day of October, 1882; that the son did work for Shaw a part of January, 1882, and the months following to the first day of said October, for which Shaw paid him the sum of $132; that the son could have entered the employ of Shaw on January 3, 1882, and could have earned wages amounting to $10.80 during said January, while he only earned the sum of $5 during said month by labor for Shaw; but that the son declined to make any agreement or enter into any contract for labor until he should first go home and confer with his father. There was no evidence tending to show, and it was not contended, that the service performed for Shaw was any less desirable than the service he had agreed to perform for the defendant.

There was also evidence tending to show that the plaintiff paid the railroad fare of his son from Belchertown to Amherst when he left the defendant's employ, and from Amherst back to Belchertown when he returned to work for Shaw; that the son was at his father's house from Monday until the following Friday; that the plaintiff spent seven days' time in looking for another place for his son as an apprentice under Oliver Smith's will, and in executing papers relating thereto, with Shaw, for which the plaintiff claimed damages at the rate of $4 per day. There was no other evidence of any special damage.

The defendant contended, and asked the judge to rule, that the defendant had not by the agreement sued on agreed to employ the son for any length of time; and that, inasmuch as by the terms of the agreement all compensation under it was to be

paid to the son, and as, under the agreement between the plaintiff and his son, the son was to have his own wages, the plaintiff could not recover in this action.

The judge found as a fact, that the defendant, on January 3, 1882, discharged the son without justifiable cause, and ruled, as matter of law, that after this breach the plaintiff had a right to recover such actual damages as he could prove to have been caused by the breach; that, if the plaintiff's son was able to receive and did receive wages from another employer for a part of the time after this illegal discharge by the defendant, that must be taken into consideration in diminution of damages; that there was no rule of law which could be laid down to the jury (in a trial by jury) requiring them to find no damages in every case where the plaintiff has actually received as much pay as he would have received if the contract had not been broken by the defendant, but if in fact the plaintiff had been put to trouble, delay, and expense in procuring new employment, the jury might find damages, if on the whole the plaintiff proved he had been injured by the breach of contract by the defendant; and the judge found as a fact, satisfactorily proved upon the whole evidence, that the plaintiff had suffered a pecuniary loss by reason of said breach.

The defendant also asked the judge to rule that, inasmuch as the son had been paid by the defendant and Shaw a larger sum than that called for by the agreement declared on, namely, the sum of $13 per month for the first year, and $14 per month for the remainder of the term, there was no damage recoverable under said agreement in this action; that the rule of damage applicable to the case, if the plaintiff could recover, was that the plaintiff had a right to recover the stipulated wages for the full time, less the amount paid to the son under said agreement, and less the further amount which the son did earn, or might during the period have reasonably earned; that the plaintiff could not recover in this action, as damages, anything for time and expenses on the part of the plaintiff in endeavoring to procure employment for his son as an apprentice under Oliver Smith's will, because the son had failed to perform his part of said agreement, by reason of his indulging in the use of ardent spirits and profane language while in the employ of the defendant.

Upon the last point, the defendant was allowed, against the plaintiff's objection, to introduce the contract made on the same day as that declared on, and evidence tending to show that the son had in two instances, during the period of his service with the defendant, drunk ardent spirits to some excess, but both these occasions were while absent in a neighboring town, and when not at work; and had once used profane and vulgar language to a servant girl while engaged in an altercation with her, out of the presence or hearing of the defendant or his wife, both being some time before the time of his discharge.

The judge ruled that, even assuming that this agreement applied to this case, there was no evidence of such an indulgence in the use of ardent spirits or profane language as would take away the right of the plaintiff to recover upon the contract declared on; declined to rule as requested; and assessed damages for the plaintiff in the sum of $25.

The defendant alleged exceptions.

*D. W. Bond*, for the defendant.

*W. Hamlin & F. E. Paige*, for the plaintiff.

FIELD, J.  By the contract declared on, as we construe it, the defendant covenanted with the plaintiff to pay the monthly wages therein expressed for the services of the plaintiff's minor son until he reached the age of twenty-one years.  The stipulation, "that all compensation shall be paid to the said Louis H. Dickinson," does not prevent the plaintiff from maintaining the action, as the defendant's covenant that he will make the payment in this manner is with the plaintiff.  *Caden* v. *Farwell*, 98 Mass. 137.  It is not clear that the indenture of apprenticeship put in evidence by the defendant has any relevancy to the case.  It does not appear why the parties made the two different contracts, or why the plaintiff in the contract declared on bound himself in the sum of $300 to hold the defendant harmless from all obligations entered into by him in the indenture of apprenticeship.  It may be that the latter was executed as a device to enable the minor to obtain the benefits provided by the will of Oliver Smith, while the former was intended to express the real understanding of the parties, but this we do not know. Whatever may have been the reason for executing the two instruments, the provisions of the indenture of apprenticeship

cannot be imported into the contract declared on so as to affect the liability of the defendant upon his covenants in the contract. It is immaterial, therefore, whether the facts found by the court as to the minor's use of profane language and of ardent spirits, did or did not constitute a violation of the covenants of the plaintiff contained in the indenture of apprenticeship. The plaintiff had a right to make the contract declared on for the services of his son during his minority. Pub. Sts. c. 149, § 22. Gen. Sts. c. 111, § 23. *Day* v. *Everett*, 7 Mass. 144. *Caden* v. *Farwell*, *ubi supra*. The alleged emancipation of the son is not a defence to this action, for this reason, among others, that the contract was executed by the son as well as by the father.

The remaining questions relate to the measure of damages. The court allowed in diminution of damages the wages earned by the son during his minority after he was discharged by the defendant; but apparently assessed damages upon the theory that the plaintiff was entitled to recover for his trouble and expenses in obtaining the new employment for his son. As the defendant has had the benefit of the new employment, he ought to bear the expenses incurred which were reasonably necessary to obtain it. The argument is, that the trouble and expenses were the father's, and that the son received a larger sum in wages than if he had remained with the defendant. There is evidence enough recited in the exceptions to warrant the finding that the services were rendered and money paid by the father at the son's request; but if this were not so, we are of opinion that, when a minor son, who has been given his time and his earnings by his father, returns to his father without employment, it is competent for the father to revoke the gift so far as it relates to future employment; and, even if this gift is not revoked, that it is the right of the father to obtain future employment for his son, if the son is willing to accept it. The gift of time and earnings by a father to his infant child does not establish a new status, but is in the nature of a license. The reasonable expenses incurred by the father in obtaining the new employment were therefore damages occasioned by the breach of the contract by the defendant. There is no exception to the amount of damages found by the court, if the rulings were correct. *Exceptions overruled.*