JOSEPH O. PROCTER & others *vs.* ATLANTIC FISH COMPANIES, Limited.

Suffolk.   January 12, 1911. — March 4, 1911.

Present: KNOWLTON, C. J., LORING, BRALEY, SHELDON, & RUGG, JJ.

*Sale. Custom. Evidence,* Of custom, Relevancy and materiality.

Where, at the trial of an action of contract brought by a purchaser of certain mackerel against the seller for damages caused by an alleged failure of the defendant to deliver what the contract of sale called for, it appears from correspondence between the parties that the contract was for the purchase of three hundred and ninety-one barrels of large, medium and small mackerel, three hundred and fifty barrels of which had been seen and partially examined by an agent for the purchaser, the plaintiff may show that the custom in the fish trade "is, when a party purchases a lot of mackerel he is supposed to receive clean fish" and not "rusty" fish.

Where, at the trial of an action of contract by a purchaser of mackerel against the seller for damages caused by an alleged failure of the defendant to deliver what the contract of sale called for, it appears from correspondence between the parties that the contract was for the purchase of three hundred and ninety-one barrels of clean mackerel, three hundred and fifty of which had been seen and partially examined by an agent for the purchaser, the plaintiff may show that the custom in the fish trade is that, when a purchaser finds that fish purchased as clean are "rusty," the purchaser "is entitled to cull out the rusty fish and have an allowance of half price for the rusties."

In the sale of specific goods as goods of a specified description, the description amounts to a warranty that the goods are as described, and the mere fact that the specific goods were open to inspection and were in fact inspected by the purchaser does not deprive him of his right to rely on such a description as a warranty if the difference between the specific goods and the description of them would not have been and was not detected on the inspection.

At the trial of an action of contract by a buyer against the seller of mackerel, where it appears that many of the mackerel, which were purchased as clean, were "rusty" and the defendant contends that before the purchase an agent of the plaintiff made such an examination of the mackerel as to preclude the plaintiff from maintaining the action, testimony of the agent that he would have made a further examination if he had not been told that the mackerel were sold to a third person, is competent as tending to show that he did not make a thorough examination.

At the trial of an action by a buyer against the seller of a large number of barrels of mackerel, where the plaintiff contends and introduces evidence tending to show that the custom of the fish trade is that, "when a party purchases a lot of mackerel he is supposed to receive clean fish," and that the fish delivered to him by the defendant were not clean but "rusty," the presiding judge properly may refuse to rule that "a warranty as to quality or condition of the mackerel cannot be implied into this case by evidence of custom or usage," since the ruling

is not applicable to the case, the custom tending to prove, not that clean mackerel and "rusty" mackerel are in the trade different qualities of the same grade of mackerel, but that they are different grades of mackerel. *Dickinson* v. *Gay,* 7 Allen, 29, distinguished and commented on.

A purchaser availing himself of a custom, which became a part of a contract of sale to him of "clean" mackerel, that if the purchaser finds that the fish delivered to him "are rusty fish he is entitled to cull out the rusty fish and have an allowance of half price for the rusties," must bear the expense of the culling out; and, if the fish were delivered to him in Boston and, under the circumstances, in order to make them salable except as "rusty" mackerel, it was necessary to re-sort and repack them, which could not be done economically in Boston, the purchaser in order to avail himself of the custom must bear the expense of transporting the fish to a place where they could be re-sorted and repacked economically as well as the expense of such re-sorting and repacking.

LORING, J. This is an action for breach of warranty in the sale of three hundred and fifty barrels, and for the breach of an executory contract for the sale by description of forty-one barrels of salt mackerel. The plaintiffs' firm did business in Gloucester and the defendant company in Lunenburg, Nova Scotia. One of the plaintiffs' employees, McKinnon by name, had seen the three hundred and fifty barrels on a wharf in Lunenburg in the first week of November, 1906. By an interchange of telegrams between the parties on November 10, 1906, the plaintiff bought the three hundred and fifty barrels, agreeing to pay $14 a barrel for large mackerel and for the medium and small "what they are worth." It is stated in the bill of exceptions "that several small lots of salt mackerel came to the defendant's place of business within a few days after McKinnon's visit, and that these lots were sent to Yarmouth and shipped with the larger lot." All the mackerel were shipped from Lunenburg to Yarmouth, Nova Scotia, where they were put on the Boston steamboat. The invoice of both lots was as follows: Large mackerel: three hundred and fifty barrels and eighteen half barrels, at $14 a barrel, amounting to $5,026. Medium mackerel: Eight barrels and eight half barrels, at $10 a barrel, amounting to $120; and small mackerel, nineteen barrels and two half barrels, at $7.50 a barrel, amounting to $150; the whole price being $5,296, to which was added $2.50 for consular papers, making a total of $5,298.50. For this the defendant drew two drafts on the plaintiffs which were paid.

By direction of the plaintiffs the fish were shipped to a Boston

firm who were instructed to sell them for the plaintiffs.  The plaintiffs' Boston agents sent to the plaintiffs' customers half a dozen samples of five barrels each, which were returned as rusty mackerel.   Thereupon one of the plaintiffs " examined the lot of mackerel " and found it to be a fact that rusty mackerel were packed in the middle of all of the barrels, with clear fish at each end.   On finding this the plaintiffs shipped the fish to their wharf in Gloucester at a cost of $114.50, and there unpacked, re-sorted and repacked them at a cost of $177.75.   One of the plaintiffs testified that there was no place in Boston where that could be done economically.   The same plaintiff also testified that " the fish were not salable except as rusty mackerel until they were repacked and that after repacking, the clear fish were salable as clear mackerel and the discolored ones as rusty mackerel."

The result of the sorting and repacking was: Large mackerel: one hundred and fifty-two barrels of these were rusty, for which the plaintiffs claimed $7 each, amounting to $1,064; one barrel marked large mackerel contained sour mackerel, for which they claimed $14, and one contained herring, for which they claimed $14, making a claim on large mackerel of $1,092. Medium mackerel: seven and one half barrels medium mackerel were mixed with large and so sold; and ten barrels and four half barrels medium mackerel were marked and sold as large, on which the plaintiffs claimed $4 a barrel, amounting to $78; also four barrels and four half barrels of the medium were rusty, for which they claimed $5 a barrel, amounting to $30, making the total claim on medium mackerel $108.   No claim was made on the small mackerel.   The defendant had agreed to make the price of small fish $6.50 in place of $7.50, at which they were invoiced.   The plaintiff's whole claim therefore was (1) for difference between invoice price of small fish and price later agreed upon $20 (not contested); (2) breach of warranty and of contract in delivering rusty fish and medium as large mackerel, $1,200; and (3) cost of sorting and repacking, $292.15.

1. At the trial * the plaintiff was allowed to prove that in the fish trade " The custom is when a party purchases a lot of mackerel he is supposed to receive clear fish.   If he finds they are rusty fish he is entitled to cull out the rusty fish and have an

---

* Before *Bell*, J.

allowance of half price for the rusties." What the plaintiff was allowed to prove by the first part of this custom was that the word "mackerel" in the fish trade has a trade meaning, namely, clear mackerel, not rusty mackerel. That was admissible. *Mooney* v. *Howard Ins. Co.* 138 Mass. 375. *Eldridge* v. *McDermott*, 178 Mass. 256. The second part of the custom is to supply by usage a basis of settlement in case of breach by delivering rusty in place of clear fish. Such an arrangement could have been made by an express agreement and the existence of the usage dispensed with the necessity of making it expressly. In our opinion it is not a usage which is contrary to the rule of law and so bad within *Dickinson* v. *Gay*, 7 Allen, 29. See in this connection *Barrie* v. *Quinby*, 206 Mass. 259.

The defendant objected to the evidence on the ground that this was a sale of specific barrels which McKinnon saw and inspected, and that the plaintiffs received those barrels and consequently that is an end of their case. In any event this reasoning applies to the three hundred and fifty barrels only and not to the forty-nine barrels. But that is of no consequence because it is not correct. It is settled in this Commonwealth that in the sale of specific goods as goods of a specified description, the description amounts to a warranty that they are as described. It is also settled that the fact that the specific goods were open to inspection and were in fact inspected by the buyer does not deprive him of his right to rely on such a description as a warranty, if the difference between the specific goods and the description of them would not have been and was not detected on the inspection. Both points were decided in *Henshaw* v. *Robins*, 9 Met. 83, where they were considered at length. For later cases see *Harrington* v. *Smith*, 138 Mass. 92; *Gould* v. *Stein*, 149 Mass. 570. And see also the cases of *Edgar* v. *Breck & Sons Corp.* 172 Mass. 581; *Putnam-Hooker Co.* v. *Hewins*, 204 Mass. 426, where the first rule stated above was applied to an executory contract of sale in which the goods were to be identified by description.

The fact, if it be a fact, in the case at bar that the bargain was completed in Nova Scotia where the defendant's offer was accepted by the plaintiffs' telegram being despatched is of no consequence. There was no evidence that the law which obtains in Nova Scotia differs from our own.

The exceptions taken to the admission of the custom must be overruled. The fifteenth and sixteenth rulings asked for by the plaintiffs * and given by the judge stand on the same footing and the exception taken to them must also be overruled.

2. The testimony of McKinnon that he would have made a further examination of the barrels of fish here in question if he had not been told that they had been sold to a third person, was competent as showing that he did not make a thorough inspection. If McKinnon by his inspection had learned of the presence of the rusty mackerel in the middle of the barrels, the plaintiffs' claim on that ground so far as the three hundred and fifty barrels are concerned could not have been maintained.

3. The sixth ruling asked for by the defendant was in these words: "A warranty as to quality or condition of the mackerel cannot be implied into this case by evidence of custom or usage." This was not given in terms, but the judge told the jury that if they found the custom testified to they could allow one half the cost price for the rusty mackerel. Under the custom clear mackerel and rusty mackerel are in the trade different grades of mackerel, not different qualities of the same grade of mackerel; and so this case does not come within *Dickinson* v. *Gay*, 7 Allen, 29. The rule adopted in that case never was law in many jurisdictions (see Williston on Sales, § 246) and has been changed in the sales act. St. 1908, c. 237, Part I. § 15 (5).

4. The last exception of the defendant is to the charge on the cost of unpacking, sorting and repacking. What the judge said was this: "If these fish came from Nova Scotia in such a condition that in order to determine the fair price and in order to put them into marketable condition it was necessary to repack them, perhaps I may state that again and have it accurate. If they came from Nova Scotia in such a condition that it was necessary in order to determine the price between the parties under the contract that they should be re-examined and re-packed, it would

---

* These were as follows:

"15. If the jury find the existence of a custom, that the seller shall make an allowance of one half the contract price to the buyer for rusty fish, the plaintiffs are entitled to recover one half the purchase cost of all the rusty fish which were delivered.

"16. The defendant is bound by a general custom of the trade, even though its agents were not familiar with it."

be an expense which would be fairly chargeable to the defendants, and if there was an expense of that kind which was a reasonably fair expense it would be chargeable to them."

If the plaintiffs had relied on the market value of the rusty mackerel as the measure of their damages, they could have recovered this expense as an expense for doing something of which the defendant has taken the benefit (see *Rowe* v. *Peabody*, 207 Mass. 226; *Dickinson* v. *Talmage*, 138 Mass. 249), and also as the consequences of the breach of warranty and of contract (see *Whitehead & Atherton Machine Co.* v. *Ryder*, 139 Mass. 366). But the plaintiffs relied on the custom and not on the market value. By the terms of the custom, to entitle themselves to " half price for the rusties " the plaintiffs had to bear this expense. The custom was that the purchaser " is entitled to cull over the rusty fish and have an allowance of half price for the rusties." This expense was incurred by the plaintiffs for their own benefit (to entitle themselves under the custom to half price for the rusty mackerel) and not for the benefit of the defendant.

The result is that there must be a new trial on damages unless the plaintiffs remit $292.15 with interest from the date of the writ. The order will be that unless that sum be remitted within thirty days the exceptions shall be sustained, the new trial being confined to damages only.

*So ordered.*

*S. R. Jones*, for the defendant.

*A. B. White*, (*P. Ketchum* with him,) for the plaintiffs.