*Northern District*

No. 5709

**ANNAWAN MILLS INCORPORATED**

**v.**

**NORTHEASTERN FIBERS COMPANY, INC., DEFENDANT**

**STATE STREET BANK AND TRUST COMPANY, ADVERSE CLAIMANT ESSEX WAREHOUSE AND FINANCE CORPORATION, TRUSTEE**

May 20, 1963

*Present*: Brooks, P. J., Connolly & Parker, JJ.
Case tried to *Darcy, J.* in the District Court of Lawrence. No. 983 of 1961.

*Parker, J.* This case arises out of a dispute between the plaintiff, which, by trustee pro-

cess has attached certain goods of the defendant in the hands of the trustee, and the State Street Bank and Trust Company, who claims adversely to the plaintiff on the basis of a financing statement under the G. L. c. 106 reading at follows: "This financing statement covers the following types (or items) of property: Cotton waste and proceeds." This financing statement was previously filed with the Secretary of the Commonwealth and the City Clerk of Boston,—Boston being the defendant's place of business. The trustee answered in the suit between the plaintiff and the defendant that "it had in its hands and possession, cotton waste goods of the said defendant of an undetermined value subject to a lien" of the trustee.

The answers of the trustee to the plaintiff's interrogatories were put in evidence by the adverse claimant. In answer to an interrogatory, asking for a full description of the cotton waste goods, the trustee listed seven lots of which lots #2 and #3 are the subject of this dispute between the plaintiff and the adverse claimant. Lot #2 is described as 63 bales of Israeli cotton linters, compressed, covered with burlap and having steel strappings, and about four feet high and three feet wide—the bales running in weight between 584 pounds to 754 pounds. Lot #3 is described as one burlap bag of linters, approximately six feet high and two and one-half feet in diameter weighing (gross) 95 pounds not compressed.

It is the plaintiff's contention that the ad-

verse claimant has not perfected his claim as to the linters, because the financing statement covered *Cotton waste and proceeds* and did not cover "cotton linters".

At the trial the plaintiff called an expert who testified that in commercial usage, "cotton linters" and "cotton waste" mean two different things;—cotton waste being a waste produce from cotton mills, and cotton linters being a by-product in the manufacture of oil from cotton seed. This testimony was objected to by the adverse claimant and upon its being admitted, a report was claimed.

The court found that the financing statement as filed used limiting language and was not sufficient to indicate or properly describe the type of collateral as cotton linters, and found in favor of the plaintiff as against the adverse claimant on the question of priority of claim to the "cotton linters".

The adverse claimant filed 16 requests for rulings. Before us, its counsel waived his requests 8 (b) and 11, and relied only on his requests 6, 7, 8 (a) and 14, which together with the court's action thereon are as follows:

"6. The plaintiff and adverse claimant are bound by the statement in the trustee's answer that it had in its hands and possession 'cotton waste goods' of the principal defendant."

*"Allowed: But see findings of fact."*

The finding of fact by the court which apply to this Request are as follows:

"The financing statement, as filed, used limiting language and was *not* sufficient to indicate or

properly describe the type of collateral as 'cotton linters' and the financing statement was *not* perfected at the time service was made on the alleged trustee. . . .

The financing statement does not include 'cotton linters' but rather refers to the type of property as 'Cotton Waste and Proceeds'. Cotton waste does not mean or include cotton linters in as much as a cotton linter is a separate and distinctive article and a cotton linter has a use and definite purpose, and is not cotton waste.

The language used in the financing statement is not descriptive of cotton linters and does not describe the type or item as required by the Code. The Adverse Claimant failed to prove at the hearing that the financing statement had been perfected prior to July 26, 1961, the date service was made on the Trustee."

The court also found that the financing statement did not comply with the requirements of the Uniform Commercial Code (G. L. c. 106) as it did not include "Cotton Linters."

"7. The financing statements (in evidence) as filed contained a statement properly indicating the 'type' of collateral covered by the trust receipt (in evidence). Code 9-402 (1)." *"Question of fact."*

"8. The adverse claimant may show a perfected security interest in the goods in the possession of the trustee in several independent ways, including (a) by filing a financing statement or (b) . . . ." *"Allowed: Provided*

*it was a perfected interest, but same was not found by the court."*

"14. A secured party is entitled to priority over an attaching creditor where its security interest in the goods in dispute was perfected before the attachment of said goods." *"But in this case it was not perfected."*

The question raised by these Requests is whether a financial statement covering types of property called "Cotton waste and proceeds" covers "cotton linters?"

The Trustee has stated in his answer that he has, in his hands, "cotton waste goods" and in his answers to interrogatories when asked for a full description of the cotton waste goods, lists as said cotton waste goods the lots of "linters". Is the plaintiff barred by these statements of the trustee from alleging that the "linters" are not cotton waste goods, since the trustee has included them under this designation in his answer and answers to interrogatories?

Under G. L. c. 246 §16, the answer of the trustee on oath shall be considered as true in determining how far he is chargeable, but either party may allege and prove facts material in determining such question and not stated or denied by the Trustee. The position of the plaintiff is not a denial of the truth of the answer of the trustee. The challenge is whether cotton linters are cotton waste goods, as a matter of law. *Zani v. Phandor Company,* 281 Mass. 139, 149.

A trustee has no authority to determine

the right of a claim by his answer or preclude a person from establishing his right to a fund in his hands. *Mortland v. Little,* 137 Mass. 339, 340-341. Further, the record does not show in what manner the answers to the interrogatories were sworn to or subscribed. If they were made subject to the penalties of perjury, they may not bind the plaintiff or prohibit him from showing the facts. *Musolino, LoConte Co. v. Costa,* 304 Mass. 253, 255; *Eastern Fur & Skin Co. v. Sternfield,* 233 Mass. 210, 213.

The plaintiff was not barred by these statements of the trustee in his answer and in his answers to interrogatories, and that there was no error in the admission of the evidence given by the expert as to the difference in the cotton trade between "cotton waste" and "cotton linters".

. . . . The difference between cotton waste and cotton linters has been discussed and determined in *U. S. v. Salomon,* 1 Court of Customs Appeals, 246.

On the evidence, it could be found, under G. L. c. 106 (referred to hereinafter as the Commercial Code) §1-205 (2), as a fact, that by usage in the cotton trade, cotton waste and cotton linters are distinct and different items and are not the same.

Does a description in a financial statement which states it covers types of property described as "cotton waste and proceeds" cover cotton linters, even though cotton linters

are treated in the trade as distinct products from cotton waste and proceeds?

By §9-110 Commercial Code, any description of personal property or real estate is sufficient whether or not it is specific, if it reasonably identifies what is described. The Comment to §9-110 is that the description is to do the job assigned to it to make possible the identification of the thing described.

The Formal Requisites of a Financing Statement are provided for by §9-402 of the Commercial Code. The relevant provisions of this section applying to the Requests for Rulings are in the first sentence of paragraph (1) reading in substance as follows:—A financing statement is sufficient if it—contains a statement indicating the types, or describing the items, of collateral and in paragraph (5) reading as follows:—"A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."

The purpose of the notice filing under §9-402 of the Commercial Code is to give notice that the secured party who has filed may have a security interest in the collateral described and that further inquiry will be necessary to disclose the complete state of affairs. The provisions of this section of the Commercial Code do not establish that the Adverse claimant has established his claim, and that the question may not be gone into to determine whether or not he has such a

claim. This proceeding is the further inquiry necessary to disclose the complete state of affairs. Comment 2 on §9-402 Commercial Code.

In the interpretation of these sections of the Commercial Code, certain overall rules of construction are to be applied. By the provisions of §1-102 (1) and (2) of the Commercial Code, the Code is to be liberally construed and applied to promote its underlying purposes and policies which are (a) to simplify, clarify and modernize the law governing commercial transactions, and (b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties.

§1-205 (3) provides that any usage of trade in the vocation or trade in which the parties are engaged or of which they should be aware, give particular meaning to and supplement or qualify terms of an agreement, and by paragraph (5) of the same section, it is provided that an applicable usage of trade shall be used in interpreting the agreement as to that part of the performance. See also Comment #1 and #4 on §1-205 of the Commercial Code.

By the law of this Commonwealth, custom of the trade may be shown to prove the meaning of words used in a contract. *Proctor v. Atlantic Fish Companies,* 208 Mass. 351, 353-355; *South Deerfield etc. Co. v. NY, NH & H RR.,* 222 Mass. 535, 537; *L. E. Fosgate Co.*

*v. Spokane Valley Growers Union*, 263 Mass. 15, 21.

The fact that a person may not have known of the usage is not controlling. *Berwick & Smith Co. v. Salem Press, Inc.*, 331 Mass. 196, 198.

The adverse claimant cites *In re AA Appliances & T.V. Center, Inc., Bankrupt* 271 Fed. (2d) 800. This case does not, however, involve the question of usage or custom of the trade, and does not deal with the Commercial Code, though it does deal with the Uniform Trust Receipt Act.

We are of the opinion that:

(1) the usage of the cotton trade distinguishes "cotton linters" from "cotton waste and proceeds", and

(2) the financial statement did not identify lots #2 and #3 in the trustee's answer as the type of collateral covered by it. For the reasons stated above, the adverse claimant did not perfect its claim to the linters in Lots #2 and #3 prior to its attachment by trustee process, and that there was no error. The Report is to be dismissed.

James D. Ragland, of Boston, for the Plaintiff.

William Robinson, of Boston, for the Defendant.

Charles D. Craig, of Boston, for the Adverse Claimant.