## DUNAGIN-WHITAKER Co. v. MONTGOMERY.

### [78 South. 580, Division A.]

1. SALES. *Sale of cattle feed. Implied warranty.*
   Where a buyer asked the seller if he had any good, mixed, feed, and the reply was "yes, the best there was" and the buyer then purchased a sack of it which turned out to be spoiled and killed the buyer's cattle. In such case there was no express warranty and no implied warranty of the soundness of the feed.

2. SAME.
   In such case the only hypothesis upon which plaintiff could recover was that the defendant knowingly sold poisoned cattle feed to plaintiff to be fed to his cattle.

APPEAL from the circuit court of Jones county.
HON. PAUL B. JOHNSON, Judge.

Suit by J. A. Montgomery against the Dunagin-Whitaker Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court. No brief of counsel for either side found in the record.

*Chas. S. Street*, for appellant.

*Stone Deavours*, for appellee.

SYKES, J., delivered the opinion of the court.

Appellee filed suit in the circuit court against appellant for damages for the value of several cows alleged

to have been killed from the effects of spoiled or poison-
ed mixed cattle feed purchased by appellee from appel-
lant. The declaration of appellee contained two counts.
The first count is based upon an implied warranty that
the feed was pure and free from poisonous substances.
The second count is predicated upon the negligence of the
appellant, in that he knew, or by the exercise of ordinary
care could have known, that the feed was damaged and
liable to injure the cattle. A demurrer was properly sus-
tained to the first count of the declaration, and the case
was tried upon the second count, and verdict and judg-
ment rendered in favor of the appellee for the sum of
one hundred and fifty dollars. Hence this appeal.

The testimony in the case shows that the appellant
was in the grocery business, and among other things
handled a great many sacks of a mixed molasses feed
prepared especially for stock called "Summo;" that
the appellee was a farmer and had a lot of dairy cows,
and on various occasions prior to the time in question
had purchased from the appellant sacks of this feed which
he had fed to his cattle; that on the 19th day of Febru-
ary, 1916, he purchased one sack of this feed from the
appellant, being waited upon by one of the clerks in the
store. The appellee says that he asked this clerk if he
had any good mixed feed and the reply was, "Yes, the
best there was." Appellee then purchased one sack
of it. That night he fed out of this sack a number of
his dairy cattle, and they became sick and died, evidently
from the effects of this feed. It is also clear from the
record that this sack of feed was spoiled, and had be-
come poisonous for cattle feed. The judgment in this
case could only be sustained in this court upon one
theory, viz. that the appellant knowingly sold poisoned
stock feed to the appellee for the purpose of being fed
to his cattle. There was no express warranty of the
soundness of this feed, and there was no implied war-
ranty of its soundness. *Dulaney* v. *Jones & Rogers*,
100 Miss. 835, 57 So. 225.

There was some testimony in the case by the appellee that just before Christmas he was in appellant's store and one of the clerks, a different clerk than the one who sold him the sack of poisoned feed, asked him if he did not want to buy some damaged feed, that they had a lot on hand, to which appellee replied that he would not have it, or words to that effect. Another witness for the appellee also testified that he had seen some damaged mixed feed in the warehouse of the appellant along about Christmas. Assuming that this testimony be true, it only shows that about a month and a half before this sack of feed was sold to appellee the appellant had on hand in his warehouse some damaged feed of the same character. The testimony shows that he was constantly selling feed of this kind and buying same. It does not show that the sack sold appellee a month and a half later was in the warehouse where this witness saw damaged feed. Taken most strongly in favor of the appellee, the testimony totally fails to show that appellant knowingly sold poisoned cattle feed to appellee for the purpose of being fed to his stock, and this is the only hypothesis upon which he could have recovered in this case. A peremptory instruction was asked by the appellant and refused. This instruction should have been given.

Reversed, and judgment will be entered here in favor of appellant.

*Reversed.*