ROYAL FEED & MILLING CO. *v.* THORN.*

(Division B. March 8, 1926.)

[107 So. 282.   No. 25489.]

1. SALES. *There is no implied warranty as to soundness of food stuff for animals.*

   There is no implied warranty as to the soundness of food stuff for animals under the law of this state.

2. PRINCIPAL AND AGENT. *All persons dealing with agent must take notice of his authority to bind his principal; in absence of authority, agent has no power to warrant soundness of animal foods for*

*any given period of time, especially where orders are transmitted to principal for approval.*

All persons dealing with an agent must take notice of the extent of the power and authority of the agent to bind his principal. In the absence of authority, the agent has no power to warrant the soundness of animal foods for any given period of time, especially where the orders are transmitted to the principal for approval.

3. SALES. *Express warranty as to quality of products to dealer does not extend to purchaser from dealer.*

It is the settled law of this state that, where a person warrants the soundness of his products to a dealer under an express warranty as to quality, such warranty does not extend to a purchaser from the dealer. *Pease & Dwyer* v. *Somers Planting Co.*, 93 So. 673, 130 Miss. 147, cited.

*Corpus Juris-Cyc. References: Agency, 2 C. J., pp. 562, n. 81; 602, n. 63. Sales, 35 Cyc., pp. 370, n. 20; 408, n. 74.

APPEAL from circuit court of Scott county.

HON. G. E. WILSON, Judge.

Action by T. R. Thorn against the Royal Feed & Milling Company for the loss of animals. Judgment for the plaintiff, and defendant appeals. Reversed, and a judgment entered for the defendant.

*Currie & Amis,* for appellant.

It is well settled in Mississippi that there can be no recovery in a case such as this on an implied warranty. *Dulaney* v. *Jones & Rogers,* 100 Miss. 835, settled this question, which case was followed by *Dunnagin-Whitaker Co.* v. *Montgomery,* 117 Miss. 666. As to whether or not Thompson had any authority under the facts in this case to make any warranty to Thorn that would be binding upon the Royal Feed & Milling Company, the record shows that Thompson was a traveling salesman employed for the purpose of selling the feeds manufactured by the Royal Feed & Milling Company. He had no other duties and any contracts that he might make were subject to confirmation by LaCour, the manager of the

Royal Feed & Milling Company. Thompson had no authority whatever to make any guaranties of contracts, and all contracts for the sale of feed made by him had to be confirmed by Mr. LaCour. For facts similar to this case, a traveling salesman not having the authority to bind his principal, either under an express or implied power, see *Becker Co. v. Clardy,* 91 Miss. 301, in which the court held that the salesman had no power, express or implied, to make a contract of sale binding upon his principal; and if Thompson had no authority to make a contract of sale binding upon the Royal Feed & Milling Company, then, of course, he had no authority to make any warranty with reference to any contract that would be binding upon the company either. The only theory under which there might possibly have been any implied power for Thompson to have made any warranty is that there must have been an established custom in the sale of mixed feeds to warrant the feeds sold, as was claimed to have been by Thompson. The record here on the part of the plaintiff not only shows that there was no such custom, but on the part of the defendant the record shows it was not the custom of the Royal Feed & Milling Company, nor is it the custom of any company manufacturing mixed feeds to give any warranty for the feed for any designated period of time. See also *Robert Johns v. Jaycox,* 39 L. R. A. (N. S.) 1151; *Dunham v. Salmon,* 109 N. W. 959.

Assuming that Thompson made the guaranty contended for by Mr. Thorn and assuming further, which we do not think to be the law, that Thompson being a traveling salesman had the implied authority to make such guaranty, Thorn could still not recover against the defendant here, the Royal Feed & Milling Company. He could certainly not recover because of any warranty that might have been made to the Stuart Company. Before there can be recovery on a warranty, as we understand the law, there must be a privity of contract; and where there is no privity of contract, there can be no warranty.

24 R. C. L. 158, sec. 431. It has also been held by this court in *Pease & Dwyer* v. *Somers Planting Co.*, 93 So. 673, that the customer of a retail dealer could not successfully sue a wholesale dealer on a warranty of quality.

Furthermore, there must be a consideration for a warranty and none is here shown. See *Continental Supply Co.* v. *Stevens*, 188 S. E. 527; 24 R. C. L., sec. 426, p. 154, 35 Cyc., p. 371. There can be no warranty where there is no privity of contract. See *Roberts* v. *Anheuser-Busch Brewing Ass'n*, 98 N. E. 95.

The judgment of the lower court should be reversed and judgment entered here for appellant.

*Eastland & Mize* and *E. O. Sykes*, for appellee.

The complaint made by the appellant is that it was entitled to a peremptory instruction.

We are not attempting to recover on an implied warranty. The cases of *Dulaney* v. *Jones & Rogers* and the Dunagan-Whitaker Company case cited for appellant hold that there is no implied warranty in a sale of stock feed. The facts and circumstances, as well as the testimony, show that the agent Thompson was authorized to make representations and warranties as to the quality and soundness of the stock feed. He was furnished samples to show prospective customers. He was the representative of the appellant to visit Morton. He made the original contract with Stuart for the sale of this feed. He was sent by his house to see what the trouble was and try to adjust it. He certainly had the apparent authority to make the express warranty, and we believe from the record that a jury was justified in finding that he had the real authority. He was not only the traveling salesman, but he was the adjuster of troubles for his house. In the *tripartite* conversation, he was the agent and representative of the appellant.

The only question really presented is whether the ultimate consumer to whom an express warranty has been

made by the manufacturer of the soundness of goods can maintain a suit for a breach of this warranty or a suit in tort for negligence growing out of the breach of the express warranty. There is no case in Mississippi, so far as we have been able to find which decides this precise question. *Peace & Dwyer Co.* v. *Somers Planting Co.*, 93 So. 673, only decides that where an express warranty is made by the seller alone to the buyer, then the ultimate consumer who purchased from the buyer cannot maintain a suit on the express warranty, because there is no privity of contract between this ultimate consumer and the original seller. The difference between that case and the instant one is that here the express warranty was made to the ultimate consumer. The doctrine of the Pease case is that there is no privity of contract. We submit in the present case that there is a privity of contract.

Boiled down this expressed warranty in this case simply means this. The appellant said to Thorn, "I have a contract with Stuart to sell him more feed stuff, you are buying my feed stuff from Stuart. Because of your dissatisfaction with it you are threatening to quit buying and Stuart for that reason is threatening to cancel his contract with me because my feed stuff is not sound. Therefore, if you will continue to buy my feed stuff from Stuart and Stuart will not cancel his contract with me, I will guarantee to you the soundness of this feed." There was a consideration for all of this, the consideration moving to the appellant was the fulfillment of the contract and of its consideration by Stuart, by virtue of the fact that Thorn, because of this express guaranty would continue to use this feed stuff. The result of this agreement was that at once Stuart ordered another carload of this feed. By virtue of this agreement the original contract was altered to the extent that Thorn as a consideration for his continued buying and using of this stuff from Stuart was given by the manufacturer this express guaranty or warranty. We submit that under these facts there is a privity of contract between the appellant and

the appellee. However, if there be no privity of contract, we submit, further, that the case should be affirmed because of the negligence of the appellant in its breach of this express warranty.

Where forms of action have not been abolished, some courts allow a recovery in a suit sounding in tort. This is illustrated by the Massachusetts case referred to in note 49, section 244a of Williston on Sales. The suit is very much in the nature of one for fraud and deceit. In the Massachusetts case the manufacturer issued a printed warranty as to the drink in question. The Massachusetts court held that there was no privity of contract but allowed a recovery on the theory of negligence based on this printed guaranty. We think that section 244a of Williston on Sales correctly states the rule which should be adopted by this court. 1 Williston on Sales, p. 4907.

ETHRIDGE, J., delivered the opinion of the court.

The appellant, Royal Feed & Milling Company, is engaged in the manufacture of mixed foods for animals, and has a general office at Meridian, Miss., in charge of its general manager. It also employed a traveling salesman to sell its products to the trade, and said salesman made a contract with one Stuart, a local dealer at Morton, Miss., for the sale of its food stuff. Stuart sold this food stuff to appellee, Thorn, for use in feeding his horses and mules, and Thorn filed suit against appellant and Stuart for the loss of his animals alleged to have been killed by eating poisoned or damaged food manufactured by the Royal Feed & Milling Company and sold to him by Stuart. There was a directed verdict in favor of Stuart in the court below from which no appeal is prosecuted. The case was submitted to the jury as to four of appellee's animals valued at one hundred fifty dollars each, and the jury returned a verdict in favor

of plaintiff against defendant, Royal Feed & Milling Company.

The testimony for the plaintiff was that he had bought the food stuff from Stuart and fed it to his animals; that some of them had died from the use of this food; that he had decided not to use appellant's food stuff again, but that the traveling salesman representing appellant in a conversation with Thorn (appellee) told him that, if he would continue to use appellant's products, he would guarantee such food stuff to be sound and wholesome for a period of thirty days from date of shipment; that after this conversation Stuart ordered another carload of appellant's food stuff, a portion of which was purchased by Thorn (appellee) and which was fed to his animals, resulting in the death of four of appellee's animals. Plaintiff also introduced evidence of other consumers or purchasers of appellant's food stuffs who testified that they lost horses and mules from feeding them the products of appellant at about the same time that Thorn's animals died.

Appellant's testimony was to the effect that its traveling salesman had no authority to make any guaranties with reference to the food stuff manufactured by it; that it was the universal custom of manufacturers of this kind of prepared food stuff to sell same on inspection; that all orders had been approved by the manager at Meridian before the contract was accepted; that the material used in the preparation of the food stuff here in litigation was sound and wholesome and properly manufactured, and that said food stuff was sound and wholesome when loaded into the cars and shipped; that under certain conditions this food stuff might become heated and spoil. Appellant also introduced testimony to show that no complaints had been received from other purchasers of food stuff manufactured and shipped by it at the same time as the shipments here in question were shipped, and that no manufactured food stuff was kept

on hand by it.   There was no sale made by the appellant
to the appellee direct.

At the conclusion of the plaintiff's testimony the ap-
pellant moved for a directed verdict, and also moved for
the same at the conclusion of the full evidence, but its
motions were overruled.   We think that under the facts
of this record the motions should have been sustained.

This court has held that there is no implied warranty
under the laws of this state of soundness in the sale of
animal foods.  *Dulaney* v. *Jones & Rogers,* 57 So. 225,
100 Miss. 835; *Dunnagin-Whitaker Co.* v. *Montgomery,*
78 So. 580, 117 Miss. 666, All persons dealing with an
agent must take notice of the extent of the power and
authority of the agent to bind the principal.   On the facts
contained in this record there is insufficient evidence to
show that the agent, Thompson, had any authority or
power to make an express warranty relied upon by the
appellee in this case.  *Becker Co.* v. *Clardy,* 51 So. 211,
96 Miss. 301, Ann. Cas. 1912B, 355.   The testimony is
undisputed that Thompson had no authority to make such
warranty.

It is settled law in this state that, where a person war-
rants the soundness of his products to a dealer under
the express warranty, it does not extend to the purchas-
ers from such dealer.   In *Pease & Dwyer* v. *Somers*
*Planting Co.,* 93 So. 673, 130 Miss. 147, it was held that
the customer of retail dealers could not successfully sue
a wholesale dealer on a warranty of quality.   Judge AN-
DERSON, speaking for the court in that case, said:

"There seems to be no division among the authorities
that a warranty by the seller of the quality of personal
property sold is addressed alone to the first purchaser;
that such warranty does not run with the title to the
property, and subpurchasers cannot avail themselves
of such warranty as against the original seller.   Some
of the reasons for the rule are that there is no contrac-
tual relation existing between the original seller, the
warrantor, and a subpurchaser.   They are unknown to

each other in the transaction. The seller who warrants does so alone for the benefit of his purchaser. He receives the purchase price as the consideration for the property and the warranty going with it.''

The judgment will therefore be reversed, and judgment entered here for appellant.

*Reversed, and judgment here.*