MIDWEST GAME COMPANY, Inc., a Corporation, Appellant,

v.

M. F. A. MILLING COMPANY, Respondent.

OZARK TROUT FARM, a Corporation, Appellant,

v.

M. F. A. MILLING COMPANY, Respondent.

Nos. 46614, 46615.

Supreme Court of Missouri, Division No. 1.

Jan. 12, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied Feb. 9, 1959.

548

Neale, Newman, Bradshaw, Freeman & Neale, Jean Paul Bradshaw, Donald J. Hoy, Springfield, for respondent.

HOLMAN, Commissioner.

Midwest Game Company, Inc., owner of the Troutdale Ranch at Gravois Mills, Missouri, and Ozark Trout Farm, a corporation, of Fayetteville, Arkansas, each filed a suit in the Circuit Court of Greene County, Missouri, seeking damages in the sum of $10,000 from M. F. A. Milling Company, defendant-respondent. The petitions were identical. Defendant filed a motion to dismiss the Second Amended Petition in each case upon the ground that said petitions failed to state a claim upon which relief could be granted. The trial court sustained said motions and each plaintiff has appealed. In this court the cases have been treated by the parties as consolidated and hence will be disposed of in one opinion. We will hereinafter refer to the petitions as though there were one.

The petition is in two counts. In the first count it is alleged:

"2. That plaintiff is, and at all times hereinafter mentioned was, the owner of the Ozark Trout Farm at Fayetteville, Arkansas, for the purpose of raising trout for commercial purposes.

"3. That by established and prevailing trade custom, manufacturers of prepared or formulated 'dry' fish foods were, and for some time prior to plaintiff's use of defendant's product, marketing only 'complete' fish foods. Said custom was known by defendant or in the exercise of ordinary prudence should have been known by it.

"4. Defendant manufactured and sold its prepared 'dry' fish food in competition with 'complete' fish foods then available.

"5. Defendant's fish food was similar in appearance, texture, contents, packaging and price to the available 'complete' fish foods.

"6. In violation of said trade custom, the defendant's fish food was and is not a

Albert Thomson, Robert Coatsworth, Davis, Thomson, VanDyke & Fairchild, Kansas City, of counsel, for appellants, Midwest Game Co., Inc., and Ozark Trout Farm.

'complete' fish food, adequate without supplementation to sustain and promote the normal health and growth of fish, and that defendant knew or in the exercise of ordinary care should have known said fact.

"7. Defendant negligently labeled and sold its fish food in a manner calculated to induce prospective purchasers and plaintiff to conclude that its fish food was 'complete' fish food, proven by laboratory research and testing by:

"(a) failing to state and warn on the labels thereto that a supplemental food was required.

"(b) failing to state and warn on the labels thereto that the defendant's fish food was merely a supplement.

"(c) failing to state and warn that the defendant's fish food was not a 'complete' fish food.

"(d) failing to state and warn that the defendant's fish food was merely an experimental formulation or product.

"(e) failing to warn that the defendant had conducted no active research or testing to determine the safety, efficacy and completeness of its fish food.

"(f) failing to include and provide sufficient fish nutriment for the healthy growth and development for fish.

"8. The defendant by negligently failing to state and warn prospective purchasers and plaintiff as aforesaid, impliedly warranted that its product was a 'complete' fish food, adequate without supplementation to promote the healthy growth and development of fish; and has estopped itself to deny its product is a 'complete' fish food.

"9. As a direct and proximate result of the defendant's negligence and breach of trade custom and usage, and in reliance on said trade custom and the defendant's superior knowledge as to its product, plaintiff purchased and fed the defendant's fish food during February, March, April, May and June, 1955, as a 'complete' fish food; and as

a direct and proximate result of the use thereof, the plaintiff's fish became sickly, afflicted and died. Plaintiff expended large sums of money endeavoring to cure and save its sick and afflicted fish, and sustained further losses in expected profits and goodwill."

We have concluded that the first count of the petition states a claim upon which relief could be granted. In considering the issues presented we have borne in mind that "It is well settled that a motion to dismiss a petition admits, for the purpose of the motion, the truth of all facts well pleaded therein and any inferences fairly deducible from the facts stated, and we construe the petition favorably to the plaintiff giving him the benefit of every reasonable and fair intendment in view of the facts alleged. * * * The question presented is whether the facts stated invoke the application of principles of substantive law which would entitle plaintiff to the relief he seeks." Jacobs v. Jacobs, Mo.Sup., 272 S.W.2d 185, 188.

No case has been cited which involves a factual situation similar to the one here presented. It would therefore seem that the case must be decided upon such general principles of law as may appear applicable. Plaintiffs contend that there are two theories under which a claim for relief is stated in the first count, i. e., (a) upon defendant's breach of an implied warranty of fitness for the purpose for which the food was sold and (b) negligence of defendant in failing to warn plaintiffs that the food was not fit for the purposes for which it was sold in that it was not a complete food. We agree that recovery could be predicated upon either of those theories.

Viewed most favorably to plaintiffs it will be noted that the petition alleges the existence of an established trade custom whereby manufacturers of prepared fish foods marketed only "complete" fish foods and that defendant knew of that custom. It is further alleged that in violation of that custom defendant manufactured and sold a

fish food similar in appearance, packaging and price to the "complete" foods which was not, in fact, a complete food, adequate without supplementation to sustain the normal health and growth of fish, which fact was known to defendant; that plaintiffs purchased and fed defendant's fish food as a "complete" food, in reliance upon said trade custom and defendant's superior knowledge as to its product. We think it may be fairly inferred from the allegations of the petition that there are certain essential food elements that must be supplied to fish that are being grown commercially under domestic surroundings (all of which are contained in the "complete" food customarily sold) and that the omission of any such essential element from the ration will, after a period of time, cause the fish to become sick and die.

Inasmuch as a petition which alleges an express warranty by a defendant that its food was a complete food would have stated a claim for relief, Ralston Purina Co. v. Swaithes, Mo.App., 142 S.W.2d 340, it is clear that if the averments of the instant petition are sufficient to state an implied warranty plaintiffs have stated claims upon which relief may be granted.

 It is an established rule that in a sale of food for immediate human consumption there is generally an implied warranty that the food is wholesome, is fit for the purpose, and is of merchantable quality. And a buyer of packaged food products may recover from the manufacturer upon an implied warranty of fitness even though there is no express privity of contract between the manufacturer and buyer. Carter v. St. Louis Dairy Co., Mo.App., 139 S.W. 2d 1025.

 Defendant concedes the existence of the foregoing rules and their applicability to the sale of food for human consumption. It points to the fact, however, that there is no allegation that the food sold to plaintiffs was unwholesome or contained any deleterious substance, and hence it is said that plaintiffs are asking the court to apply a more liberal rule to the sale of food for animals than is applied to the sale of food for human use. That contention would be valid if it were not for the allegation concerning the trade custom of selling only "complete" fish foods. We think it is reasonable to conclude that an implied warranty of fitness may be annexed to a transaction by reason of a trade custom or usage. Note the following from the Uniform Sales Act: "§ 15. Implied warranties of quality. —Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: * * * (5) An implied warranty or condition as to the quality or fitness for a particular purpose may be annexed by the usage of trade." 1 U.L.A. p. 6. While we recognize that this state has not adopted the Act, we think the fact that the quoted section was approved by the National Conference of Commissioners on Uniform State Laws, and has been adopted by 35 states, lends support to the soundness of the view we have adopted. See also Procter v. Atlantic Fish Companies, 208 Mass. 351, 94 N.E. 281; Jacobs v. Danciger, 328 Mo. 458, 41 S.W.2d 389, 77 A.L.R. 1237; and Pine-Brownell Co. v. Coleman, 63 Ohio App. 259, 26 N.E.2d 216.

 Defendant has pointed out that in some states it has been held that an implied warranty of fitness does not attach to the sale of food for animals. The cases of Kroger Grocery & Baking Co. v. Woods, 205 Ark. 131, 167 S.W.2d 869, and Royal Feed & Milling Co. v. Thorn, 142 Miss. 92, 107 So. 282, so hold. To the contrary, however, see Judd v. H. S. Coe & Co., 117 Conn. 510, 169 A. 270, and Larson v. Farmers' Warehouse Co., 161 Wash. 640, 297 P. 753. It is our view that an implied warranty should at least attach in cases like the instant one where the food is not in its raw state but has been processed and packaged by the manufacturer. We therefore hold that under the allegations of the first count of the petition evidence would be admissible

from which a jury could reasonably have found that defendant impliedly warranted the fish food as fit for the purpose of being used as a "complete" fish food.

It is also contended by defendant that evidence concerning the "trade custom" would not be admissible because it would "vary, contradict and add to" the terms of the express written warranty contained on the label. We see no merit in that contention. While it appears from the petition that the fish food was labeled, there is no allegation as to what was stated thereon. The only allegation relating to the label was that there was no warning thereon to the effect that the instant food was not a "complete" fish food.

As heretofore indicated, we are also of the opinion that the first count states a claim on the basis of defendant's negligence in failing to warn (under the circumstances alleged) that the food sold to plaintiffs was not a complete food. The petition alleges that defendant knew of the trade custom of marketing only "complete" fish foods— knew that its food was similar in appearance, packaging and price to the "complete" foods, and knew that its food was not complete and adequate, without supplementation, to promote the normal health and growth of fish. Under those allegations, plaintiff was entitled to introduce evidence from which a jury reasonably could find that the defendant should have known that purchasers (such as plaintiffs) would likely purchase and feed its food as a "complete" fish food and as a direct result thereof sustain damage by reason of the sickness and death of their fish. It may be inferred from the allegations of the petition that an incomplete fish food is as injurious as one which contains an affirmatively harmful ingredient. The facts alleged, if proved, would reasonably warrant a finding that, in the exercise of ordinary care, defendant owed prospective purchasers a duty to warn that its fish food was not a "complete" food and was not fit for use as such and that a failure to so warn would constitute negligence. As stated, no case has been cited

which is similar to the one before us. The food in question was not inherently dangerous. However, when used as a "complete" fish food it became dangerous in the sense that sickness and death of fish would result. Under the particular factual situation alleged, it would seem that the general principles applicable in negligence cases are sufficient to support the conclusion we have reached.

Defendant has assumed in its brief that the failure of plaintiffs to allege that manufacturers of "complete" fish foods *did not* label their products as "complete" would warrant the inference that those manufacturers *did* label their product as a "complete" fish food. We agree that if it had been alleged that the manufacturers of the "complete" fish foods customarily sold, had labeled their product as "complete," that fact would have been a very important element for consideration in determining whether defendant had a duty to warn that its food was not complete. However, since the petition did not allege that the manufacturers of the "complete" food either did or did not label their fish food as "complete," we do not think we should infer or assume that they did state on the label that it was a "complete" food. In that connection we note also that there is no allegation that the labels on defendant's food, or the labels on the "complete" food, contained an analysis of the ingredients used in the processing or manufacturing of their respective products. We must consider the petition in the light most favorable to the plaintiffs and hence may not ordinarily make adverse assumptions in regard to facts concerning which there is no allegation.

■ In the second count of the petition plaintiff adopts paragraphs 2 and 3 of Count I, and further alleges, in part, as follows:

"2. Title 21, Chapter 9, U.S.C.A., known and referred to as the 'Federal Food, Drug and Cosmetic Act,' and all parts thereof hereinafter set forth, was in full force and effect at all times during which plaintiff purchased the defendant's fish food.

"3. Said Federal act provides in part as follows:

"Section 321, Definitions; generally. '(f) The term "food" means (1) articles used for food or drink for man or other animals.'

"Section 343—Misbranded Food. 'A food shall be deemed to be misbranded—(a) if the labeling is false or misleading in any particular.'

"4. Defendant's fish food labels were misleading to prospective purchasers and plaintiff and in violation of said Act and statutes in the following particulars: Plaintiff adopts and incorporates allegations 7 (a), 7(b), 7(c), 7(d), 7(e) and 7(f) of Count I herein.

"5. Plaintiff relied on the correctness and completeness of the defendant's fish food labels in purchasing said fish food; and was entitled to so rely.

"6. Defendant sold its fish food intrastate and interstate."

As indicated, plaintiffs, in that count, have endeavored to state a claim for relief based upon a violation of Section 343(a) of Title 21, Chap. 9, U.S.C.A. The Federal Food, Drug and Cosmetic Act is penal in nature and may be enforced by a criminal prosecution or by an action to condemn the food or other articles introduced into interstate commerce in violation of the Act. We find no provision in the Act which states that persons injured by reason of its violation may recover damages from the person committing the violation. We therefore assume that plaintiffs pleaded the violation of the Act in an effort to aid their claims of negligence on the part of defendant under the general rule that "a violation of a statutory duty or the violation of a municipal ordinance designed for the protection of the person claiming to have been injured by reason of the violation is negligence *per se*. * * * And an injured party may institute an action at common law for negligence, and set up and prove a violation of a statute or ordinance as constituting a negligent act on the part of defendant." Wells

v. Henry W. Kuhs Realty Co., Mo.Sup., 269 S.W.2d 761, 767, 47 A.L.R.2d 1038.

The word "food" as used in the Act means food for animals as well as food for human use. Section 321(f), supra; United States v. One Car Load of Corno Horse and Mule Feed, D.C., 188 F. 453. We can see no reason why evidence that defendant had misbranded its fish food, in violation of Section 343(a), supra, and that damage proximately resulted therefrom, would not reasonably warrant a jury finding for plaintiffs. Armour v. Wanamaker, 3 Cir., 202 F. 423. In such a submission a finding of hypothesized facts which would constitute a violation of Section 343(a) would be negligence per se. In our consideration of the first count of the petition he held that the facts alleged, if proved, would reasonably support a finding that defendant owed a duty to prospective purchasers to warn that its food was not a complete fish food. In considering the second count it would seem that the facts alleged, if proved, would constitute a violation of Section 343(a) in that, under those facts, a failure to state on the label that the food was not a "complete" fish food would reasonably warrant a finding that the labeling was "misleading in any particular" and hence that the food was "misbranded" in accordance with the definition of that term as contained in Section 343, supra. A label may be misleading even though it does not contain any affirmative misstatement. United States v. Kocmond, 7 Cir., 200 F.2d 370; United States v. 30 Cases, etc., D.C., 93 F.Supp. 764. We accordingly rule that the trial court erred in sustaining the motions to dismiss the second count of the petitions.

In our consideration of the second count we note that there would be no violation of the Act unless the particular food in question was introduced into interstate commerce by the defendant. Section 331(a), Title 21, Chap. 9, U.S.C.A.; United States v. 38 Cases, Etc., 99 F.Supp. 460; United States v. Phelps Dodge Mercantile Co., 9 Cir., 157 F.2d 453. Defendant in its brief

has not questioned the sufficiency of the allegations in that regard. The petition contains a general averment that "defendant sold its fish food intrastate and interstate." In the situation presented we deem it advisable to point out that upon a trial of these cases there should be no submission of the question of liability under the second count unless there is proof that defendant introduced the particular food complained of into interstate commerce.

The judgment dismissing plaintiff's petition is, in each case, reversed, and the causes are remanded.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.