ALBERS MILLING COMPANY, a Corporation, Appellant,

v.

Marvin CARNEY and Opal Carney, Respondents.

No. 48271.

Supreme Court of Missouri,

Division No. 1.

Dec. 12, 1960.

Robert Stemmons, Mt. Vernon, for appellant.

Edward V. Sweeney, Monett, for respondents.

HOLMAN, Commissioner.

Plaintiff instituted this action in an effort to recover an unpaid balance of $5,024.28 for feed sold to and money advanced for defendants under the provisions of a turkey financing agreement. Defendants filed an answer, setoff and counterclaim wherein, as a defense to plaintiff's claim and as the basis for a recovery of damages in the sum of $8,196.47, they alleged that plaintiff had furnished them impure and inferior feed which caused the illness and death of many of their turkeys. At the close of the evidence the court, upon motion of plaintiff, directed a verdict for it upon defendants' counterclaim and the jury returned a verdict for plaintiff in the sum of $3,000 upon the claim alleged in its petition. Defendants' motion for a new trial on both plaintiff's petition and defendants' counterclaim (which contained twelve as-

signments of error) was sustained by the trial court "on all grounds mentioned in said motion." Plaintiff appealed to the Springfield Court of Appeals but that court properly transferred the appeal to this court. We have appellate jurisdiction because the amount defendants seek to recover in their counterclaim exceeds $7,500 and the notice of appeal herein was filed prior to January 1, 1960. Article V, Section 3, Constitution of Missouri 1945, V.A. M.S.; Section 477.040, as amended Laws 1959, Senate Bill No. 7, P.P. Vol. 27, V.A. M.S.; Albers Milling Co. v. Carney, Mo. App., 335 S.W.2d 207.

Respondents (defendants) have assumed the burden of supporting the action of the trial court in granting said new trial and have filed the original brief. The points briefed will be hereinafter detailed in the course of the opinion.

Prior to 1956 defendants had not engaged in the business of growing turkeys. Early in that year representatives of Albers Milling Company (plaintiff) held a promotional meeting in Crane, Missouri, which was attended by Mr. Carney. In an effort to promote the sale of plaintiff's feed and other products, its representatives (at that meeting) apparently offered to finance approved applicants who desired to engage in the business of raising turkeys. Thereafter, on January 24, 1956, defendants executed an instrument entitled "Application for Turkey Financing to Albers Milling Company." That application contained detailed information regarding defendants, their farm and their financial condition. Plaintiff approved the application and on March 5, 1956, wrote defendants that it would finance the production of 10,000 turkeys in an amount not exceeding $40,000. Under the agreement plaintiff was to have a lien on the turkeys as security for the account, and defendants agreed to pay 6% interest on the amounts advanced and certain service charges upon the financing of the purchase price of certain grains and other feeds "not processed by Albers." The agreement also contained the following provisions: "Applicant agrees to pay current market prices as billed applicant for feeds ordered from and delivered by Albers Milling Company, or its dealers or distributors. If there is any balance due on account after sale of birds, applicant agrees to pay the same promptly to Albers Milling Company. The relationship between applicant and Albers Milling Company shall be that of debtor and creditor. Applicant to have the sole responsibility for the raising and sale of birds. Albers Milling Company not to have any interest in profits of applicant and is not to share any losses sustained."

Plaintiff presented evidence to the effect that it paid for 10,400 poults purchased by defendants at a cost of $7,384, and advanced $520 for insurance on said turkeys and (through its dealer, Moreland Feed & Supply) furnished defendants the feed, medicine and other supplies required for the growing of said turkeys. The advancements, together with interest and service charges, totaled $38,536.55. The receipts from the sale of the turkeys were paid to plaintiff but were not sufficient to pay the account. Those credits reduced the account to $5,024.28. Plaintiff's credit manager also testified on cross-examination that the feed processed by plaintiff is delivered in sealed paper bags.

Defendant Marvin Carney testified that Moreland Feed & Supply Company of Crane, Missouri, sold the products of plaintiff in that area and was designated by plaintiff to furnish the feed used by defendants; that during the first six to eight weeks following purchase, the turkeys were kept indoors and were thereafter placed on range; that the range he used was new and had never been used for the raising of any type of poultry or hogs; that there were no ponds or other source of stagnant water on the range and that fresh well water was piped to the turkeys; that no mold formed or accumulated around the water tanks or feeding troughs; that during the first twenty weeks of the feeding period the feed furnished by plaintiff was free from mold and the turkeys grew satisfactorily:

that the hens are ordinarily marketed when about eighteen weeks old and that most all of the hens in this flock had been marketed before sickness developed in the flock; that a field representative for the plaintiff would visit defendants' farm at regular intervals and give defendants instructions concerning the care and feeding of the flock; that when the turkeys were about twenty weeks old defendants received a quantity of plaintiff's prepared feed called "pellet formula" that was hard, lumpy, and moldy; that bacteria was growing on the feed, "it had whiskers a quarter of an inch long"; that he did not know that moldy feed was harmful to turkeys and consequently fed this moldy feed to the turkeys, although he advised plaintiff's field man of the moldy condition; that within two or three days after he started feeding the moldy feed to the turkeys they began to look droopy and sick and started to lose weight and developed digestive disturbances; that the turkeys developed dysentery, and, of the 6,000 turkeys then in the flock 2,000 of them died and 90% of the remainder were sick; that at the time the turkeys became ill they weighed about 24 pounds, were all in a good state of health, were ready for market and had a reasonable market value of $5 each; that approximately 3,000 of the turkeys that became ill did not die and their reasonable value, after they became ill, was only 50¢ each; that at the time the turkeys became ill the range and water were clean, there was no mold on the range, and nothing unusual in the manner in which the flock was fed or handled other than the fact that they were then being fed moldy feed.

Henry Moreland was called by the defendants and testified that he was in the feed business at Crane, Missouri; that in 1956 he sold and distributed plaintiff's feed to the turkey growers in that area. He stated that between the 1st and 10th of October 1956, he knew there had been an outbreak of disease in the flock of the defendants. He further stated that shortly before the outbreak of the disease he knew that the feed which came from the Albers Milling Company, and which he furnished to defendants, was lumpy and moldy.

In an effort to prove that the illness and death of the turkeys was the result of feeding the moldy feed, defendants made a number of offers of proof to which the objections of plaintiff were sustained. The facts which defendants offered to prove will be hereinafter set out in connection with the various contentions of defendants that the court erred in excluding the proffered evidence.

■ The first point briefed by defendants is that "plaintiff by processing and furnishing the feed in question in sealed bags for use as turkey feed, impliedly warranted that it was wholesome and fit for use as turkey feed." We agree with that contention. Our recent case of Midwest Game Company v. M. F. A. Milling Co., Mo.Sup., 320 S.W.2d 547, clearly supports that contention. In that case we held that there was an implied warranty in regard to certain fish food sold by the defendant. In discussing the question therein we said: "Defendant has pointed out that in some states it has been held that an implied warranty of fitness does not attach to the sale of food for animals. The cases of Kroger Grocery & Baking Co. v. Woods, 205 Ark. 131, 167 S.W.2d 869, and Royal Feed & Milling Co. v. Thorn, 142 Miss. 92, 107 So. 282, so hold. To the contrary, however, see Judd v. H. S. Coe & Co., 117 Conn. 510, 169 A. 270, and Larson v. Farmers' Warehouse Co., 161 Wash. 640, 297 P. 753. It is our view that an implied warranty should at least attach in cases like the instant one where the food is not in its raw state but has been processed and packaged by the manufacturer." 320 S.W.2d loc. cit. 550. In some respects the instant case is more favorable to a holding of implied warranty than Midwest because here (although the feed was actually sold by Moreland) there was privity of contract between plaintiff and defendants. We accordingly hold that there was an implied warranty that the

feed in question was wholesome and fit for use as feed for turkeys.

■ We also agree with the contention of defendants that proof of a breach of said warranty would support the submission of their claim for damages to their turkeys resulting therefrom. Defendants were permitted to prove that certain of the feed was moldy and that within two or three days after feeding it many of the turkeys became ill and a large number died. We need not determine whether that proof (together with other facts and circumstances heretofore detailed) would be sufficient to support a submission of defendants' claim for damages. This for the reason that other evidence was offered and excluded which (together with the evidence admitted) would have made defendants' claim clearly submissible. It appears from the action of the trial court in sustaining the motion for new trial that said court had concluded that it erred in excluding that evidence. As will hereinafter appear, we affirm that view. Cases supporting our holding that defendants' evidence (including that proffered) was sufficient to support the submission of their claim for damages are Midwest Game Company v. M. F. A. Milling Company, supra, Larson v. Farmers' Warehouse Co., 161 Wash. 640, 297 P. 753, Thatcher Milling & Elevator Co. v. Campbell, 64 Utah 422, 231 P. 621, and McBride v. Farmers' Seed Ass'n, 248 Ky. 514, 58 S.W.2d 909.

■ Defendants also contend that evidence of a breach of the implied warranty of fitness would support the submission of that issue as a defense to plaintiff's claim. That contention is only partially correct. The major part of the feed furnished was not moldy and plaintiff made no complaint in regard to same. Many other items in the account had no connection with the moldy feed. The breach of implied warranty would not be a defense to any of the items that make up the account except the charges which represent the purchase price of the feed that was moldy. Assuming that the moldy feed was of no substantial value for any purpose the breach of implied warranty claimed by defendants would be a complete defense to a recovery for the purchase price of that particular feed. See Albert v. Kopplin Molding Corporation, 8 Cir., 247 F.2d 107, and cases cited therein.

Mr. Carney testified as follows:

"Q. Now, this loss you had was some three years ago? A. Yes.

"Q. Since that time have you made a study of the turkey business and industry? A. Yes, sir.

"Q. Have you made a study of the feeding and care of turkeys? A. Yes.

"Q. And you have made a study of illnesses in birds? A. Yes, I have.

"Q. And made a study of causes of illnesses in birds? A. Yes.

"Q. You have been doing that for three years? A. Yes.

"Q. Have you talked to experts in that field? A. Yes.

"Q. And you have studied texts from the Agriculture Department on that? A. Yes.

"Q. And various authorities on that? A. Yes. * * *

"Q. Mr. Carney, taking into account your experience and knowledge and study, and taking into account your knowledge of these birds, the way they were fed and the feed given to them and its condition, do you have an opinion as to what the illness was and what caused it? A. Yes.

"Q. What is that opinion, your opinion?

"Mr. Stemmons: Now, I will object to that.

"Judge Ginn: It will be sustained. (Outside the hearing of the jury.)

"Mr. Sweeney: Let the record show that if permitted to do so, I would prove by this witness, Mr. Carney, that these birds were suffering from an inflammation of the

digestive tract caused by the feeding of the molded feed furnished by the Albers Milling Company.

"Judge Ginn: The offer will be refused."

Defendants contend that the court properly granted a new trial because it erred in excluding the foregoing proffered testimony.

"The fact that the care of animals is generally in the hands of practical men rather than professional men renders it necessary, when considering the admissibility of opinion testimony regarding diseases and the physical conditions or care of animals, to apply a much lower standard of qualification to witnesses giving opinion testimony on such matters than is applied to expert witnesses offering testimony as to the diseases or physical conditions of human beings." 20 Am.Jur., Evidence, § 815, p. 685. "It is a general rule that witnesses who are neither professionally trained nor in professional positions, may express their opinions upon the issue of the presence in animals of a particular disease, in connection with a relation or description of symptoms manifested, if they are sufficiently qualified by special knowledge, experience, skill, training, or observation to make such opinions of value. * * * Opinion evidence of a witness is admissible on the subject of causation if, although not a doctor or other professional person, he possesses special qualifications in the way of knowledge, skill, training, experience, or observation concerning the matter of inquiry, which place him in a better position to come to the correct conclusion concerning causation than a person of ordinary intelligence not having those qualifications, and if it is reasonably apparent that the court or jury ought to have the benefit of the opinion in making a finding." Annotation 49 A.L.R.2d 932, 953, 961. In support of the general rules we have quoted here, see Grismore v. Consolidated Products, 232 Iowa 328, 5 N. W.2d 646 [30], Hartford Fire Ins. Co. v. Thompson, 8 Cir., 175 F.2d 10, Colley v. Cox, Mo.App., 266 S.W.2d 778 [11], Swift & Co. v. Morgan & Sturdivant, 5 Cir., 214

F.2d 115 [4], 49 A.L.R.2d 924, Alford v. Kruse, 183 Minn. 158, 235 N.W. 903, and Wheatcraft v. Myers, 57 Ind.App. 371, 107 N.E. 81 [8].

It is obvious that Mr. Carney did not possess the experience or other qualifications to testify as a "lay expert" at the time his flock became diseased. However, it would seem to be elementary that his qualifications are to be determined as of the time he is offered as a witness. We are also mindful of the well-established rule "that the admission or exclusion of expert opinion testimony is a matter largely within the discretion of the trial court and the exercise of that discretion will not be interfered with unless it plainly appears that such has been abused." Superior Ice & Coal Co. v. Belger Cartage Service, Inc., Mo.Sup., 337 S.W.2d 897, 906. The trial court in sustaining the motion for new trial "on all grounds" indicated its view that it erred in excluding the foregoing proffered evidence. While the testimony concerning Mr. Carney's knowledge upon the subject was not as detailed as would be desired, we are nevertheless of the opinion that it was sufficient proof of his knowledge upon the subject to warrant a ruling on our part that the admission of said opinion evidence would not constitute an abuse of discretion of the trial court.

Defendants called as a witness Everett Robbins, a turkey grower living in the same area. After certain objections to his testimony had been sustained defendants made the following offer of proof: "Mr. Sweeney: We offer to prove by this witness that he obtained Albers Milling Company feed, through the Moreland Feed and Supply Company, and that in the same lot and at the same time that Carney got his feed which was molded, this witness also received moldy feed, and immediately upon feeding such feed to his flock, his turkeys developed the same sickness as did Mr. Carney's birds, and that was the one common factor between the two flocks, the moldy feed and identical illnesses in the

birds.." A similar proffer was made in regard to the testimony of three other witnesses, i. e., Chester Bowling, Noel Suttles, and Bill Hadcock. An objection that the proffered evidence was immaterial was, in each instance, sustained.

We think the court erred in sustaining the objections to said offers of proof. The evidence appears to have been material and relevant. The fact that other growers using plaintiff's feeds (furnished by Moreland) received moldy feed from the same lot and about the same time defendants received the feed complained of would tend to corroborate defendants' testimony to the effect that he received moldy feed. Also, the testimony of those witnesses that their turkeys became ill of the same disease that afflicted defendants' turkeys, immediately after they ate the same type of moldy feed, would tend to prove that said disease is caused by the consumption of moldy feed. Our view that the evidence was admissible is supported by the following cases: Swift & Co. v. Morgan & Sturdivant, supra; Maybach v. Falstaff Brewing Corp., 359 Mo. 446, 222 S.W.2d 87 [7], and Brendel v. Union Electric Light & Power Co., Mo. Sup., 252 S.W. 635. See also 32 C.J.S. Evidence § 584, p. 438.

Plaintiff has briefed the contention that it proved conclusively by documentary evidence that defendants owed it $5,024.28; that defendants presented no defense thereto and hence the court erred in overruling its motion for judgment in that amount in accordance with its motion for directed verdict. We have heretofore indicated our view that defendants' evidence (including that proffered) of plaintiff's breach of the implied warranty would support the submission of their defense to some of the items included in the account. In that situation the court could not properly have directed a verdict (or entered judgment) for plaintiff in the amount sued for.

The order granting a new trial is affirmed and cause remanded.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.