ANNA DE GOUVEIÁ, APPELLANT, v. H. D. LEE MERCANTILE CO. ET AL., RESPONDENTS.—100 S. W. (2d) 336.

Kansas City Court of Appeals. December 7, 1936.

*Cope & Hadsell, Hume & Raymond* and *Roy W. Rucker* for appellant.

*Gossett, Ellis, Dietrich & Tyler* for respondents.

BLAND, J.—This is an action for personal injuries suffered by the plaintiff by reason of an alleged breach of warranty as to the fitness for human consumption of the contents of a can of salmon purchased by the plaintiff in Kansas City from one Ben Singmon, a grocerman. The case was brought against Singmon, the retail dealer and H. D. Lee Mercantile Company, wholesale merchants, who sold the can of salmon in question to Singmon.

At the close of plaintiff's testimony she took an involuntary non-suit and moved, unsuccessfully, to have the same set aside, resulting in this appeal by her. The question presented to us by both parties in their briefs is whether there was sufficient evidence to go to the jury on the question of liability of the defendants, or either of them. The can of salmon involved was purchased by the plaintiff on the 26th day of January, 1933. She took it home and she and her family ate of it at the evening meal, resulting in plaintiff becoming ill. A subsequent examination of the contents of the can indicated that it contained a large black fly.

The H. D. Lee Mercantile Company is a corporation located in Kansas City, Missouri, with a branch in Salina, Kansas, and is engaged in the business of wholesaler and jobber of food stuffs. Plaintiff had no dealings with this company. Plaintiff's evidence tends to show that the H. D. Lee Mercantile Company purchased the salmon in question from the Pacific American Fisheries located in South Billingham, Washington, through the latters agents, Deming & Gould. The salmon in question had been packed by the Pacific American Fisheries at one of its plants in Alaska.

The lot, which the can in question was a part, had no labels on them when purchased. The labels of the H. D. Lee Mercantile Company were furnished by it to Deming & Gould, who, in turn, delivered them over to the Pacific American Fisheries for attachment to the cans. These labels included the one on the can in question and contained the trademark of the H. D. Lee Mercantile Company being the word "Lee" surrounded by a wreath. The label, in reference to the trademark, contained the further words "The Guide To High-Grade Foods." It also stated: "Salmon Packed For The H. D. Lee Mercantile Company, Kansas City, Missouri, Salina, Kansas." No other name appeared on the can.

When the can was purchased by the plaintiff there was nothing unusual about its appearance, the label on it was clean, the can was not bulged and, when it was opened, the inside was bright and shiny.

There was no improper odor about the fish. The meat was firm and there was no decomposition in the fish, itself, so far as the plaintiff could see. When plaintiff purchased the can of salmon in question she asked for Lee's brand of salmon because Singmon had told her on former occasions, when she purchased salmon from him, that Lee's brand of food was high-grade products and that Lee's brand of salmon was the best salmon handled by Singmon. She also purchased it because, ''It was advertised and I had always thought the red salmon that Lees advertised was high-grade food; that was the reason I bought it.'' There is no evidence as to what the advertisement consisted of that was seen by plaintiff prior to her purchase of the salmon in question.

It is insisted by the plaintiff that she made a submissible case, against the defendant, H. D. Lee Mercantile Company, for a breach of an implied warranty of fitness for human consumption of the salmon in question.

It is well settled that the vendee may sue his immediate vendor for a breach of implied warranty of fitness of an article sold for immediate human consumption. [Beyer v. Coca-Cola Bottling Co. of St. Louis, 75 S. W. (2d) 642; Fantroy v. Schirmer, 296 S. W. 235; Crocker Wholesale Gro. Co. v. Evans, 272 S. W. 1017.] The general rule is that a warranty of chattels is contractual in its nature and that there can be no warranty without privity of contract. [Ranney v. Meisenheimer, 61 Mo. App. 434; Chappell v. Boram et al., 159 Mo. App. 442; Wm. Wurdack Elec. Mfg. Co. v. Elliott et al., 207 S. W. 877.] There is no privity of contract in this case between plaintiff and the H. D. Lee Mercantile Company.

However, this court in the case of Madouros v. K. C. Coca-Cola Bottling Co., 90 S. W. (2d) 445, held the bottler of Coca-Cola liable to the consumer on the theory of a breach of an implied warranty of fitness for human consumption of the article, although there was no privity of contract between the consumer and the bottler. This ruling was undoubtedly contrary to the weight of authority on the question in this country. [See cases cited at page 448 of the opinion in the Madouros case.] Defendants attempt to have us overrule the decision in that case. However, we do not think that case is determinative of this one and, therefore, we will not attempt to review it. That case, if anything, is authority against the contention of the plaintiff, for the reason that this court went to the extreme of holding the bottler liable as a warrantor to the consumer, in the absence of any contractual relation between them, ond the ground, among others, that the manufacturer, himself, was the only person who could have known of the contents of the bottle; that the product was designed for ultimate consumption in its original container by an individual patron; that it was so put out as to facilitate and make convenient a

resale which might be made pending its ultimate consumption and that no handler of the product was able to learn of its contents.

As before stated, the Madouros case is based on an exception to the rule that there can be no implied warranty in the absence of a contractual relation. The holding was based upon an unusual circumstance and one not present in the case at bar as affecting the H. D. Lee Mercantile Company, the wholesaler, and we are not disposed to make any further exception to the rule, especially when there is no reason for so doing. When the salmon in question was purchased by the H. D. Lee Mercantile Company it was sealed with no oportunity for that company to inspect it and discover whether it contained the foreign matter found in its contents by the plaintiff. Consequently, that company was in a different situation than the manufacturer, whose duty it was to see that no harmful matter got into the food when it was being packed.

No case is cited by the plaintiff holding the wholesaler liable to the purchasing consumer on the theory of implied warranty. The case of Darks v. Grocer Co., 146 Mo. App. 246, cited by the plaintiff was one based upon negligence. Aside from this, the wholesaler represented itself as the manufacturer of the article containing the poison. No question involving the matter of privity of contract could have arisen for the reason that the suit was between the vendor and the minor children of the vendee, who came to his death as a result of partaking of the poison sold the vendee by the vendor. The case of Slavin v. Liggett & Co., 177 Atl. 120 (N. J.), was a negligence case. There is nothing in the opinion in the case of Swift & Company v. Hawkins, 164 So. 231 (Miss.); disclosing that it was one based upon the theory of warranty.

However, plaintiff contends that the H. D. Lee Mercantile Company should be held under the rule stated in the Am. Law Institute, Restatement of the Law of Torts, section 400, as follows: "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." In this connection plaintiff says that the matter printed on the label of the H. D. Lee Mercantile Company, appearing on the can in question, was equivalent to a representation to the public that that company was the packer of the salmon. We are unable to agree with this contention. The label stated that the salmon was packed for the H. D. Lee Mercantile Company, not by that company. Nor was there any representation contained in it tending to lead a purchaser to believe that the H. D. Lee Mercantile Company was the packer. [Am. Law Institute Restatement of the Laws of Tort, sec. 400, p. 1087; Fleetwood v. Swift & Co., 108 S. E. 909, 911 (Ga.).] In the cases of Swift & Co. v. Hawkins, and Slavin v. Liggett & Co., supra, cited by the plaintiff, the wrapper or label on the box or can did not indi-

cate other than the person who labeled the article was its packer or manufacturer. In the case at bar the label clearly negatived the idea that the H. D. Lee Mercantile Company was the packer of the salmon because it stated that it was packed "for" that company.

However, it is claimed that said defendant is liable on the theory of an express warranty. This argument is based upon advertisement appearing in a local newspaper several weeks *after* the purchase of the can of salmon in question and which, of course, had nothing to do with its purchase, and it is also founded upon the contents of the label upon the can in question. We need not go into the subject as to whether the contents of the label otherwise constituted an express warranty, for the reason, assuming that it otherwise could be said to do so, there is no privity of contract between the H. D. Lee Mercantile Company and the plaintiff. Therefore, there can be no recovery in this case on the theory of an express warranty. [See cases cited *supra.*]

However, it is claimed that the defendant, Singmon, is liable on the theory of an implied warranty of fitness for human consumption of the contents of the can in question. We think this contention is well taken. There are two lines of cases in this country on the subject. One holds that the retailer of food in sealed packages put up by the manufacturer is not liable to the consuming purchaser on the theory of implied warranty, the holdings of these authorities being based upon the ground that the consumer knows, when he purchases the food, that there has been no opportunity for the retailer to learn of the contents of the sealed package, and that, both of them having the same knowledge in respect to the food, it would be unjust to hold the retailer on the ground of an implied warranty of fitness. The theory upon which these authorities is based is well expressed by Ruling Case Law. [See 11 R. C. L., p. 1124.] Some of the reasons for holding that there is an implied warranty under such circumstances, are well stated by Williston on Sales, see 1 Williston on Sales (2 Ed.), Sec. 242, pp. 481, 482, as follows: "The imposition of absolute liability upon a dealer who sells canned goods of reputable manufacturer has been denied by the Supreme Court of Maine on the ground that the seller cannot possibly discover that a particular can is defective, and that it is, therefore, unjust to subject him to liability. The same argument, however, may be made in regard to any implied warranty, not only of food, but of other articles where the seller could not discover the defect. Accordingly, if canned goods are to be made an exception to the general rule governing sales of food, the whole law of implied warranty should be revised and placed on the basis of negligence. But the general principle of the common law is opposed to this, and certainly if a dealer is ever to be made liable for injuries caused by defective goods where he has been guilty

of no fault, the reasons are stronger for holding him liable for selling defective food than in any other kind of sale. According to the weight of authority, presumably for these reasons, a dealer is liable for selling such food even though in cans of reputable brand.''

Those authorities which deny liability on the part of the retail dealer, under such circumstances, say that their view of the matter is founded upon justice and reason. Admittedly, those authorities are based upon an exception to the general rule, which all authorities recognize, that is, that under common law principles there is an implied warranty as between the retail dealer and the consuming purchaser in the sale of food, including a warranty of freedom from foreign substances which may be injurious to the latter. Apparently all of the authorities agree that there should be no exception in the case of the sale of food in cans or sealed packages, unless the ends of justice would be better served by making one. We are doubtful if such ends would be better served by denying the liability of the retail dealer. There is no doubt but that the retail dealer is in a better position to know and ascertain the reliability and responsibility of the manufacturer of the article, which he is handling, than the purchaser from him. To adhere to the general rule places the responsibility upon the party to the contract best able to protect himself and to recoup himself in case of loss, because he knows, or comes in contact, with the manufacturer or the wholesaler, as the case may be, from whom he purchased the article and, who undoubtedly, would be responsible over to him, upon a proper showing, on the theory of breach of implied warranty of fitness, as indicated in the Madouros case. [See also Crocker Wholesale Groc. Co. v. Evans, *supra*.]

It will be noted that, in the case at bar, plaintiff had no means of ascertaining the packer from an inspection of the can of salmon bought. The consuming purchaser has no remedy against the wholesaler on the theory of warranty and it would be difficult to imagine a case justifying a recovery against either the wholesaler or the retail dealer for negligence. In the case at bar the H. D. Lee Mercantile Company was guilty of no negligence, it would seem, as it purchased the can in question from a reputable packer, one of the largest in the country. There is nothing in the case to suggest that any recovery could be had against the retail dealer for negligence.

In the case of Griffin v. Jas. Bitler Groc. Co., 108 N. J. L. 92, the court refused to make any distinction between food sold in bulk or by measure and that sold in containers, saying, l. c. 97, that ''the seller can recoup from the manufacturer, while in that regard the retail purchaser is greatly at a disadvantage,'' and stating that ''Of this, the case at bar is an apt illustration, as the cannery was in California, and the purchase was made in Patterson, New Jersey.'' In the case of Burkhardt v. Armour & Co., 161 Atl. 385 (Conn.), the actual

packer and the first purchaser were both located in the Republic of Argentine, the distributor in Chicago and the retailer in Connecticut. [See 1. c. 390.] In the case at bar the packer is located in the State of Washington while plaintiff lives in Missouri.

As before stated, we are not convinced that the ends of justice would be furthered in this case of denying the application of the general rule in reference to warranties of food as between the retail dealer and the consuming purchaser and for that reason we do not feel that we should make any exception to that rule. We find no facts in the case justifying its submission to the jury, as against either defendant, on the theory of express warranty, but it will be remanded so that it may be submitted, as against the defendant, Singmon, on the theory of an implied warranty. The judgment is reversed and the cause remanded. All concur.