**Tobias SHAPIRO, Plaintiff,**

v.

**HOTEL STATLER CORPORATION et al., Defendants.**

**No. 16034.**

United States District Court
S. D. California, Central Division.
June 23, 1955.

Reuben Rosensweig, Los Angeles, Cal., for plaintiff.

Sidney A. Moss, Los Angeles, Cal., for defendants.

JERTBERG, District Judge.

This cause came on for trial before the Court on June 8, 1955.

The jurisdiction of the Court in this case is based upon diversity of citizenship and the amount in controversy is more than $3,000. The essential facts are not in dispute. The agreed facts covered by the stipulated pretrial order are "that the defendant Statler Hotel Corporation is in the general hotel business in Los Angeles, California, and provides, for a price, large dining rooms and banquet service for persons requesting the same; that on May 7, 1953, "Pep Boys, Manny, Moe and Jack, of Cali-fornia", through one Mr. Gary, ordered and arranged for an employee dinner in the Cleveland Room of the defendant hotel. The plaintiff is now and was then an employee of said "Pep Boys" and attended said employee dinner.

"That at said dinner there was served for immediate consumption as food a dish or course generally known and described as 'Hot Barquette of Seafood Mornay'. The plaintiff began eating said course and while in the act of swallowing a spoonful thereof, a fishbone lodged in his throat which required hospitalization and the aid of a physician to remove."

It was not disputed that the menu for the banquet was ordered by one Gary, an employee of "Pep Boys, Manny, Moe and Jack of California", and that the ordered menu included "Hot Barquette of Seafood Mornay". No printed menu was furnished to the diners and the plaintiff was unaware of the nature of the course which was served but learned later that the dish was "Hot Barquette of Seafood Mornay". Mr. Francis Mendicina, the chef for the Hotel Statler, testified on behalf of the defendant that "Hot Barquette of Seafood Mornay" is made with several different kinds of fish. He stated that it can be made with filet of sole, flaked, or halibut, flaked, or shrimp or crab meat or any similar type of fish. The complete recipe contains the fish, wine, butter and cream, a creamed sauce, all mixed together and that some of the fish used have bones. The physician called on behalf of the plaintiff testified that the fish bone which lodged in the plaintiff's throat was "round, between two and two and a half inches", and that it tapered as fish bones do.

The case went to trial on the theory of a breach by the defendant of an implied warranty that the food served was reasonably fit for human consumption and was grounded upon section 1735 of the Civil Code of the State of California, which in part provides:

"Where the buyer, expressly or by implication, makes known to the seller the

particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

The construction of this quoted section was before the Supreme Court of California in the case of Goetten v. Owl Drug Co., 1936, 6 Cal.2d 683, 59 P.2d 142. The Court specifically held that the furnishing of food by restaurant keepers constitutes a sale and that in such a sale there is an implied warranty that the food is wholesome and fit to eat. In Mix v. Ingersoll Candy Co., 1936, 6 Cal.2d 674, 59 P.2d 144, the plaintiff sought to recover damages for personal injuries resulting from the swallowing of a fragment of a chicken bone contained in a chicken pie sold and served by the defendant to the plaintiff in a public restaurant. The trial court sustained a demurrer to plaintiff's complaint, and the Supreme Court affirmed such order. At page 682 of 6 Cal.2d, at page 148 of 59 P.2d, the Court said, "We have no hesitancy in so holding, and we are of the opinion that despite the fact that a chicken bone may occasionally be encountered in a chicken pie, such chicken pie, in the absence of some further defect, is reasonably fit for human consumption. Bones which are natural to the type of meat served cannot legitimately be called a foreign substance, and a consumer who eats meat dishes ought to anticipate and be on his guard against the presence of such bones. At least he cannot hold the restaurant keeper whose representation implied by law is that the meat dish is reasonably fit for human consumption, liable for any injury occurring as a result of the presence of a chicken bone in such chicken pie."

The principle of law enunciated in the Mix case was applied in Silva v. F. W. Woolworth Co., 1938, 28 Cal.App.2d 649, 83 P.2d 76, 77. In that case the plaintiff had ordered a "special plate" of roast turkey with dressing and vegetables. A small bone lodged in her throat. The Court reversed a judgment in favor of the plaintiff, and held, relying on the Mix case, that the turkey and the dressing must be looked upon as one dish as delivered, and such dish contained no substance not " 'natural to the type of meat served' ".

Plaintiff contends that the doctrine of the Mix case does not apply because the plaintiff did not order the dish, was not furnished a printed menu, and was without knowledge of the nature of the dish served, and that the presence of the fish bone in the dish was a "foreign substance". In view of the only testimony in this case concerning the recipe for "Hot Barquette of Seafood Mornay", the Court would be indulging in pure conjecture and speculation to find that the fish bone which caused plaintiff's injury was a substance foreign to the dish served.

The remaining question is whether or not plaintiff can recover because he did not order the dish, saw no printed menu, and was unaware of its ingredients. The dish in question was ordered by an employee of plaintiff's employer. The only witness on this subject was the maitre d'hotel of the defendant, Maurice Reibert. He testified that such employee ordered menu No. 79, which included "Hot Barquette of Seafood Mornay". The order and the menu were received in evidence and marked "Exhibit A".

Since it is the view of this Court that the fish bone which lodged in plaintiff's throat was natural to or its presence might reasonably be anticipated in "Hot Barquette of Seafood Mornay", it would necessarily follow that if the fish bone had lodged in the throat of Mr. Gary, that he could not have recovered damages under the principle enunciated in the Mix case. It is the view of the Court that the duty of the defendant toward the plaintiff is no greater than its duty toward the person who ordered the menu.

Judgment is therefore ordered for the defendant, and defendant is directed to file and lodge with the Clerk of this Court

findings of fact and conclusions of law, and form of judgment consistent with the views expressed herein. The Clerk of this Court is directed to mail copies of this order forthwith to all counsel.