## DeGraff v. Myers Foods, Inc.

*Arthur B. Walsh*, for plaintiff.

*John Leslie Kilcoyne*, for defendant.

SATTERTHWAITE, J., December 26, 1958.—Plaintiff has brought this action in assumpsit to recover consequential damages alleged to have been caused by defendant's breach of an implied warranty that a certain

item of food prepared by it was wholesome and fit for human consumption. The complaint, after alleging that plaintiff had purchased at an Acme Market a certain chicken pie which had been prepared, packed and distributed by defendant, further alleged as follows:

"2. The defendant impliedly warranted that the said chicken pie was wholesome and fit for human consumption, including freedom from substances which might be injurious to the consumer.

"3. On the foregoing date, the plaintiff started to eat the said chicken pie, and while partaking of it, a chicken bone lodged in his throat, resulting in injuries hereinafter described."

The complaint further related the particular items of alleged injury to plaintiff's person and concluded with a prayer for compensatory damages.

Defendant has filed preliminary objections in the nature of a demurrer, in effect contending that the alleged chicken bone was a natural part of the material of the chicken pie, and that it was therefore not a foreign substance. Accordingly, it is argued, the complaint does not state a cause of action since, in order to constitute a breach of the implied warranty of fitness for consumption, it must appear that the food either was contaminated or otherwise deleterious in itself, or contained a harmful substance or material foreign to the nature of the food in question.

Preliminarily, it should be noted that defendant has made no point of the fact that plaintiff did not purchase the pie directly from defendant. The case has been argued and submitted solely on the questions just outlined; so far, it has been presented by counsel on both sides just as though plaintiff had dealt immediately with defendant. Accordingly, we likewise will so treat it, without consideration of the problem of privity of contract.

Prior to July 1, 1954, the case would have been determined under section 15(1) of The Sales Act of

May 19, 1915, P. L. 543, 69 PS §124, now repealed, which provided as follows:

"Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"First. Where a buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

Under this language, it is clear that in the case of food in a state prepared for immediate consumption, as is implicit in the instant action, the purpose of the purchase is apparent and reasonably inferable from the very transaction itself, and further that the buyer necessarily must have relied upon the producer's skill or judgment in the preparation thereof: Bonenberger v. Pittsburgh Mercantile Co., 345 Pa. 559, 561-562, and the authorities therein cited. See also Annotation, 7 A. L. R. 2d 1027. The real problems in the instant case therefore would seem to be whether or not the presence of the chicken bone rendered the chicken pie not wholesome and not fit for human consumption and, if so, whether or not the consequent breach of implied warranty was the legal cause of plaintiff's alleged injuries.

Defendant contends that, as a matter of law, we should necessarily hold adversely to plaintiff on the first of these questions, relying upon the decision of the Supreme Court of California in Mix v. Ingersoll Candy Co., 6 Cal. 2d 674, 59 P. 2d 144, decided in 1936. This case likewise involved a claim for personal injuries arising out of a fragment of chicken bone con-

tained in a chicken pie sold and served in defendant's restaurant. The action was brought on the alternative theories of breach of implied warranty under section 1735 of the California Civil Code, which was section 15(1) of The Sales Act, or common law principles of negligence. The court held that demurrers to both counts of plaintiff's complaint were properly sustained, no cause of action having been pleaded under either theory as a matter of law. The rationale was that since it is a matter of common knowledge that chicken pies occasionally and naturally contain chicken bones, the presence thereof does not reasonably render the pie unfit for human consumption, and the foreign substance cases are not controlling.

The decision in the Mix case has been followed in other California cases: Silva v. F. W. Woolworth Co., 28 Cal. App. 2d 649, 83 P. 2d 76 (1938), turkey bone in turkey dinner; Lamb v. Hill, 112 Cal. App. 2d 41, 245 P. 2d 316 (1952), bone in chicken pie; Shapiro v. Hotel Statler Corporation, 132 F. Supp. 891 (1955), fishbone in fish dinner; as well as in certain other jurisdictions: Brown v. Nebiker, 229 Iowa 1223, 296 N. W. 366 (1941), bone sliver in pork chops; Goodwin v. Country Club of Peoria, 323 Ill. App. 1, 54 N. E. 2d 612 (1944), bone in creamed turkey. See Annotation, 143 A. L. R. 1421.

Moreover, the Mix case was distinguished, but not disapproved, in Arnaud's Restaurant, Inc. v. Cotter, 212 F. 2d 883 (1954), where the United States Circuit Court of Appeals for the Fifth Circuit upheld liability for injuries on the breach of implied warranty theory under the law of Louisiana in a case involving a piece of crab shell in a dish of which crabmeat was not an ingredient, the shell being a foreign substance under the circumstances. Compare Lore v. De Simone Bros., 172 N. Y. S. 2d 829 (1958), where liability was founded on similar reasoning for injuries from a bone

fragment embedded in the finely ground contents of a salami. Paolinelli v. Dainty Foods Manufacturers, Inc., 322 Ill. App. 586, 54 N. E. 2d 759 (1944), relied upon by plaintiff herein, might be distinguished on similar grounds; in addition, it should also be noted, that case was decided on negligence concepts, not principles of warranty. In the latter connection, see Norris v. Pig'n Whistle Sandwich Shop, Inc., 79 Ga. App. 369, 53 S. E. 2d 718 (1949), in which the Mix case was cited with approval in affirming a nonsuit in a negligence case by one injured by a bone fragment in a pork sandwich.

While the foregoing precedents would indicate that the weight of authority in this country would favor defendant's argument in the instant case, unfortunately for it Pennsylvania seems to be a minority of one in holding to the contrary. In Bonenberger v. Pittsburgh Mercantile Co., supra, decided in 1942, the Supreme Court reversed a judgment on a directed verdict for defendant, holding, inter alia, that it was a jury question whether or not the implied warranty of wholesomeness arising from section 15(1) of The Sales Act had been breached by reason of a piece of oyster shell in a sealed container of oysters purchased by plaintiff from defendant. While consuming an oyster stew prepared therefrom, plaintiff was seriously injured by swallowing the piece of shell. Although two justices dissented, relying on the Mix case, supra, a majority of the court held that reasonableness could not be declared as a matter of law, and that evidence showing the care taken by the packers to eliminate shells, although persuasive and relevant on the question as to whether the product was in fact reasonably fit for human consumption as food, nevertheless was for the jury, not the court. It is clear from the dissenting opinion that this decision is flatly contrary to that reached in the California and other cases discussed

above, and accordingly precludes us from following the latter.

The relevant sales provisions of the Uniform Commercial Code of April 6, 1953, P. L. 3, effective July 1, 1954, do not alter the situation in defendant's favor. Section 2-314, 12A PS §2-314, provides for an implied warranty of merchantability and subsection (2) thereof, in addition to other requirements which may or may not prove relevant in the instant case, stipulates that in order to be merchantable goods must be "fit for the ordinary purposes for which such goods are used." See also section 2-315, 12A PS §2-315, substantially continuing the implied warranty of fitness of purpose contained in section 15(1) of The Sales Act, supra; we need not express any opinion at this time as to the significance, if any, of the omission of an express reference to reasonableness in the latter provision.

Solely because we feel bound by the Bonenberger decision, defendant's preliminary objections to plaintiff's complaint must be overruled. We take this occasion to point out, however, that although consequential damages may be recovered in this type of proceeding for breach of warranty, the latter will include only such personal injuries as "proximately" resulted from the breach: Section 2-715(2)(b) of the Uniform Commercial Code, 12A PS §2-715. Moreover, we reiterate that because the question was not raised or argued we have rendered no opinion as to whether or not defendant's implied warranties in producing and selling chicken pies extended to plaintiff, apparently a remote consumer and not a purchaser from defendant. In this connection, see section 2-318 of the Uniform Commercial Code, 12A PS §2-318, and especially comment (3) of the commissioners thereunder. Compare Bonenberger v. Pittsburgh Mercantile Co., supra, at pp. 563-564, and Loch v. Confair, 361 Pa. 158, 163,

with Sincavage v. Armour and Company, 74 D. & C. 279, 283-286.

*Order*

And now, December 26, 1958, for the reasons stated in the foregoing opinion defendant's preliminary objections to plaintiff's complaint are overruled, with leave to defendant to file an answer within 20 days from this date.