John T. ROSS, Appellant,

v.

PHILIP MORRIS & COMPANY, Ltd., a Corporation, Appellee.

No. 17202.

United States Court of Appeals Eighth Circuit.

Feb. 26, 1964.

Rehearing Denied March 20, 1964.

Charles L. Carr, Kansas City, Mo., Clay C. Rogers and Lyman Field, Rogers, Field & Gentry, Kansas City, Mo., of counsel, for appellant.

David R. Hardy, Kansas City, Mo., William W. Shinn, Kansas City, Mo., John Vance Hewitt and Alexander Holtzman, New York City, Carl E. Enggas, Kansas City, Mo., Conboy, Hewitt, O'Brien & Boardman, New York City, and Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, Mo., for appellees.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

MATTHES, Circuit Judge.

This so-called cigarette-cancer case originated in the Circuit Court of Jackson County, Missouri, on November 23, 1954, was removed to the United States District Court for the Western District of Missouri on the ground of diversity of citizenship and the requisite amount in controversy, and was tried in that court before a jury in June and July, 1962. From a judgment entered pursuant to a verdict for defendant-appellee (hereinafter referred to as defendant), plain-

tiff-appellant (hereinafter referred to as plaintiff) has perfected this appeal.

Count I of the complaint upon which the action was tried was for breach of an implied warranty; Count II sounded in negligence; and Count III for fraud and deceit by false advertising. Defendant's motion for summary judgment on Count III was sustained before trial, thus eliminating that count from jury consideration. In addition to answers which essentially amounted to a general denial, defendant also interposed as defenses: (1) the statute of limitations, (2) assumption of risk, and (3) contributory negligence. (1) was determined adversely to defendant in a pre-trial conference, and (2) and (3) were not submitted to the jury and are not in issue on appeal. The implied warranty and negligence counts were submitted, and by general verdict, both were resolved adversely to plaintiff. On this appeal plaintiff has abandoned the fraud and deceit issue, and —except as to the court's refusal to admit certain evidence, seeks no review of the disposition of the negligence count.

The nature of the points relied upon as grounds for reversal does not necessitate a detailed recitation of the evidence. For purposes of this opinion, the following factual résumé will suffice.

Plaintiff was born on November 20, 1899, and began smoking cigarettes when he was 28 or 29 years old. He became a confirmed smoker in 1934, and from that time until his cancer operation in 1952, he smoked Philip Morris brand cigarettes almost exclusively. Plaintiff increased his consumption of smoking cigarettes from the early 1930s and within four or five years was smoking two packages a day. Again, he increased to the point where in 1939 and 1940 he smoked as many as three and sometimes four packages a day. He did not reduce his smoking until he went to Mayo Clinic for the cancer operation in 1952.

In 1951 plaintiff first experienced a throat irritation. As a result of a medical examination and biopsy performed upon him in January or February, 1952, plaintiff was informed that he had cancer of the throat. He immediately went to Mayo Clinic at Rochester, Minnesota, for a complete examination. There, on February 16, 1952, upon the basis of medical advice, he submitted to an operation which included a laryngectomy, a neck dissection, and a tracheotomy. Since the operation plaintiff has had to breathe through an opening in his neck, and can speak only with the aid of an electric device attached to his throat.

Plaintiff's own testimony reveals a history of indulgence, heavy at times, in alcoholic liquor. He is a former member of Alcoholics Anonymous, was arrested several times on charges involving intoxication, and with the exception of the year when he was a member of Alcoholics Anonymous, indulged—in varying degrees—in the consumption of liquor.[1]

Plaintiff's contentions here bring into question (1) the nature and scope of defendant's warranty of Philip Morris cigarettes, and (2) the propriety of the trial court's action in excluding certain proffered evidence. More precisely, on the crucial implied warranty issue, plaintiff challenges the validity of the court's charge to the jury. Plaintiff contends that his offered instruction properly declared the applicable Missouri law of implied warranty and that prejudicial error resulted in the court's refusal to give such instruction. In pertinent part, this refused instruction declared:

> "the law to be that one who manufactures, processes and markets cigarettes for consumption and smoking by the general public, such as the defendant Philip Morris Company, Ltd. * * * *owes to consumers of its product the duty to provide cigarettes which, including the smoke therefrom, do not contain any*

---

1. The testimony of defendant's six distinguished doctors was to the effect that smoking of cigarettes was not the cause of plaintiff's cancer of the pyriform fossa. At least four of these doctors stated that suspected factors in the cause of cancer of the pyriform fossa include alcohol.

harmful, dangerous or deleterious substances to human health when smoked and used by consumers, that is to say, cigarettes that are fit and wholesome for human consumption. In this respect, the law implies a warranty of fitness for human consumption to the smoker of such product irrespective of whether the manufacturer did not know, or even could not have known in the exercise of the ultimate in care, skill and foresight, that the product may have contained any harmful, dangerous and deleterious substances or ingredients." (Emphasis supplied).

The refused instruction authorized a verdict for plaintiff on the implied warranty count if the jury found—

"on the basis of reasonable probability, there were harmful, dangerous and carcinogenic substances in the tobacco smoke of defendant's cigarettes, * * * and that such smoking of defendant's cigarettes, on the basis of reasonable probability, directly caused plaintiff's cancer * * *.

"And this is true, and is the law, * * * irrespective of whether the defendant did not know, nor in any way could have known, that its product contained any such harmful, dangerous and carcinogenic substances and ingredients. * * *."

Instead of giving plaintiff's offered instruction, the court submitted the issue of alleged breach of implied warranty to the jury by an instruction which stated, inter alia:

"A manufacturer of products, such as cigarettes, which are offered for sale to the public in their original package for human use or consumption, impliedly warrants that its products *are reasonably wholesome or fit for the purpose for which they are sold, but such implied warranty does not cover substances in the manufactured product the harmful effects of which no developed human skill or foresight can*

*afford knowledge."* (Emphasis supplied):

The given instruction then authorized a verdict for plaintiff upon a finding that there were harmful, dangerous, carcinogenic substances in the tobacco smoke of defendant's cigarettes that caused or contributed to cause cancer in the plaintiff.

*"Provided, however, that if you find and believe from the evidence that there were cancer causing substances in defendant's cigarettes, and that the harmful effects of such substances could not have been anticipated by the use of any developed human skill or foresight before the commencement of plaintiff's cancer,* then your verdict should be for the defendant on Count I, dealing with the alleged breach of implied warranty." (Emphasis supplied).

It should be observed that plaintiff, in objecting to the instruction that was given, did not in the trial court and does not here seriously challenge the sufficiency of the evidence to support the instruction. The principal objection to the italicized portion of the instruction made in the trial court was that it—

"misstates the law of implied warranty in Missouri in that it permits the defendant to escape, if the jury found and believed from the evidence that harmful effects and substances in the defendant's product could not have been anticipated by the use of any developed human skill or foresight, because under the law of Missouri, * * * the defendant is under a duty of absolute liability under implied warranty once it is shown that the product for human consumption contained harmful, dangerous or carcinogenic substances, and it would make no difference whether the defendant knew or could have known of such substances in its product, * * *."

Plaintiff also objected to that portion of the instruction submitting the issue of "reasonableness," asserting that under

the law of Missouri "the defendant is not permitted to escape under implied warranty on the *reasonableness* of its product being wholesome or fit, but it is again a question of *absolute liability* whether it is wholesome or is fit." (Emphasis supplied.)

Defendant asserts that the given instruction on implied warranty submitting the elements of "reasonableness" and "developed human skill or foresight" was a proper one, and also claims that the court properly refused to permit introduction of the questioned evidence. Additionally, however, defendant argues that: (A) under Missouri law, a cigarette manufacturer does not impliedly warrant its product to an ultimate consumer and that, consequently, the breach of implied warranty issue should not even have been submitted to the jury, and (B) the evidence was insufficient as a matter of law to make a submissible case on the essential question whether the smoking of defendant's cigarettes caused plaintiff's cancer.

█ Of course, in this diversity action, our function is limited to ascertaining and applying the law of Missouri—not in formulating it. Explicitly, we are required to determine what the Supreme Court of Missouri would declare the law to be if this case were before it.

Turning to the Missouri cases with this function in mind, we find that issue (A) above was authoritatively resolved against defendant by the Missouri Supreme Court in Morrow v. Caloric Appliance Corporation, en banc, 372 S.W.2d 41 (November 11, 1963). In Morrow, damages were sought by the purchasers of a gas range from the manufacturer on the theory of breach of an implied warranty of reasonable fitness for use. In upholding the trial court's action in submitting this issue and in permitting recovery on this theory, the Supreme Court struck down the privity requirement rule which had previously been applied in Missouri except in a limited number and type of cases hereinafter more fully considered.

█ When the case before us was argued and submitted on November 14, 1963, neither counsel nor this court was aware of the opinion in Morrow. Thereafter, in forwarding copies of the Morrow opinion to this court, counsel for defendant tacitly conceded that the holding therein was dispositive of issue (A), stating:

"The Morrow case imposed liability upon a manufacturer of a defective gas range on the theory of implied warranty despite lack of privity of contract with the plaintiffs. This case is contrary to the position taken by appellee in Point IA of its Brief that liability for breach of implied warranty in Missouri in the absence of privity extends only to food and drink, * * *."

In light of the teachings of the court in Morrow, further discussion of this point is deemed unnecessary. We are satisfied that in Missouri lack of privity between the manufacturer and the consumer of cigarettes is not in itself a bar to recovery for alleged breach of an implied warranty.

Inasmuch as defendant prevailed below on the merits, and in view of our disposition of plaintiff's assignments of error here, defendant's point (B) is rendered moot, and we pretermit consideration of it.

Here, plaintiff's central attack upon the trial court's instruction on implied warranty follows the same theme as it did below. Plaintiff argues that under Missouri law the manufacturer of cigarettes owes the ultimate consumer the "absolute duty" to have its product "fit and wholesome for human consumption;" that the manufacturer is "absolutely liable" and is "an insurer of the fitness and wholesomeness of its product;" and that the manufacturer acts "at its peril," irrespective of knowledge, "actual or constructive" and "even regardless of the possibility or impossibility of the manufacturer obtaining knowledge, that its product contains harmful, dangerous, deleterious or carcinogenic substances and ingredients."

■ We recognize that in Missouri it has with finality been judicially determined that when an implied warranty claim asserted by the purchaser is based on injuries from food or beverages manufactured for human consumption, the rule or doctrine of strict liability prevails, with or without privity, regardless of negligence. For example, in Williams v. Coca-Cola Bottling Co., Mo.App., 285 S.W.2d 53, 55 (1955), a Missouri intermediate appellate court, after citing numerous Missouri cases imposing strict liability in implied warranty without privity, stated:

> "Considerations of public policy, * * * and the protection of the health of the consuming public require that an obligation be placed upon the manufacturer of Coca-Cola to see to it, *at his peril,* that the product he offers the general public is fit for the purpose for which it is intended, namely, human consumption. The 'demands of social justice' require that his liability should be made *absolute.*" (Emphasis supplied.)

The definite trend in Missouri—even in cases not involving the typical food for human consumption situation—has been away from the privity requirement in actions by the ultimate consumer against a manufacturer for breach of implied warranty of fitness. See and compare, Worley v. Proctor & Gamble Mfg. Co., 241 Mo.App. 1114, 253 S.W.2d 532 (1952) (soap detergent); Midwest Game Company v. M. F. A. Milling Company, Mo.Sup., 320 S.W.2d 547 (1959) (food for fish); Albers Milling Company v. Carney, Mo.Sup., 341 S.W.2d 117 (1960) (feed for turkeys); Borman v. O'Donley, Mo.App., 364 S.W.2d 31 (1962) (corn silage for cattle); Morrow v. Caloric Appliance Corporation, supra, 372 S.W. 2d 41 (1963) (gas range).

■ In light of this history, we conclude that under the proper factual situation the Missouri courts would impose the same strict liability upon a manufacturer of cigarettes as has been applied in the food and beverage cases.

But, in our considered view, if presented with the *facts in this case,* the Missouri courts would not apply the strict rules of the "fly in the bottle cases" but—on the contrary, would limit absolute liability to the same extent that such liability was limited here by the district court.

It is enlightening to note the reasoning employed by the courts in the cases imposing an absolute liability upon a manufacturer for breach of an implied warranty. Emphasis is placed upon "social justice," for "only the manufacturer * * * can know of the contents * * *." Williams v. Coca-Cola Bottling Company, supra, 285 S.W.2d at 55; Worley v. Proctor & Gamble Mfg. Co., supra, 253 S.W.2d at 537; Degouveia v. H. D. Lee Mercantile Company, 231 Mo.App. 447, 100 S.W.2d 336, 337–338, 339 (1936) (manufacturer not a party; remanded for submission against retailer). Here, however, we fail to comprehend how the ends of justice could be served by adopting the fiction that the manufacturer of cigarettes was—as early as 1934 (when plaintiff began smoking defendant's cigarettes exclusively)—in a better position, except in theory, than the consumer to ascertain the now highly-publicized causative relationship between smoking and cancer of certain areas of the body. It is perhaps tempting in the light of knowledge of today to create the thought that defendant should have been aware of the cancer-smoking relationship; that the controverted instruction unduly stresses the scientific knowledge or foreseeability factor; and that the instruction has no evidentiary basis— not to mention the lack of *specific* legal precedent in the field of implied warranty in Missouri. However, it should be carefully noted that this case must be decided on the facts as they existed in the light of the knowledge of the early 1930s to 1952.

Examination of the "fly in the bottle" or food cases in Missouri readily reveals significant distinctions between them and the instant case. For example, a mouse in a bottled soft drink—Holyfield v. Jop-

lin Coca Cola Bottling Co., Mo.App., 170 S.W.2d 451 (1943); broken glass in buttermilk—Carter v. St. Louis Dairy Co., Mo.App., 139 S.W.2d 1025 (1940); particles of glass in soup—Bell v. S. S. Kresge Co., Mo.App., 129 S.W.2d 932 (1939) (soup purchased at defendant's lunch counter); a fly in a can of salmon—Degouveia v. H. D. Lee Mercantile Co., supra, 100 S.W.2d 336 (manufacturer or packer not a party defendant); formaldehyde in buttermilk—Fantroy v. Schirmer, Mo.App., 296 S.W. 235 (1927); or even *moldy feed for turkeys*—Albers Milling Company v. Carney, supra, 341 S.W.2d 117, present rather flagrant deviations from what a consumer expects when he buys a product and what the manufacturer intends his product to contain. These cases involve products containing readily identifiable foreign matter, inherently nauseous, deleterious, or putrid; in every case the risk of harm could reasonably have been foreseen as a consequence of the presence of the defect.

And although not as obviously distinguishable, there also are significant differences between this case and both Worley v. Proctor & Gamble Mfg. Co., supra, 253 S.W.2d 532—involving a detergent alleged to contain an ingredient which caused a skin infection,[2] and Midwest Game Company v. M. F. A. Milling Company, supra, 320 S.W.2d 547—involving a fish food which, contrary to trade custom, was not a "complete" food. In Worley, defendant made no contention that it was scientifically impossible to have known of the alleged danger in using its detergent, but rather defended in part on the ground that plaintiff failed to show that the detergent contained any ingredient or chemical compound injurious to the skin. In reversing in favor of defendant, the court stressed the possibility of an allergy, stating that "plaintiff failed to sustain the burden * * * to prove that she was one of the class covered by the warranty."[3] Likewise, in Midwest Game, plaintiff could point to no deleterious, foreign matter in the fish food, but was able to state a claim upon which relief could be granted because plaintiff could specifically allege that the food lacked certain ingredients, was an incomplete food, and thus—most importantly—did not measure up to the standards and customs of the trade.[4]

Contrarily, here plaintiff has made no contention that defendant's cigarettes do not conform to the standard of the cigarette industry, but rather has presented evidence in an attempt to prove not only that smoking defendant's cigarettes caused his cancer, but also to show the *general* causative relationship between smoking cigarettes—*of any brand*—and cancer of certain portions of the body. Plaintiff does not attempt to isolate a foreign, deleterious substance peculiar only to defendant's cigarettes. Nor does he contend that the cigarettes contained a substance which—like the fish bone in the seafood cases[5]—was inherent to the original material or food

2. Our research discloses that most authorities consider Worley as involving implied warranty, although some have associated it with express warranty law. See, e. g. Williams v. Coca-Cola Bottling Company, supra, 285 S.W.2d at 55.

3. Compare also, Merrill v. Beaute Vues Corporation, 10 Cir., 235 F.2d 893 (1956) (allergy to home permanent wave lotion).

4. Compare Simmons v. Rhodes & Jamieson, Ltd., 46 Cal.2d 190, 293 P.2d 26 (1956), where the Supreme Court of California, en banc, affirmed a judgment granting a nonsuit in an action brought by the buyer of cement against the seller and its agent to recover damages for burns sustained by the buyer while handling the cement. The court found that since the cement was fit for the purpose of laying a basement floor (the purpose for which it was sold), and since there was no showing that the cement contained any unusual substance or was different from ordinary cement in any way, there was no breach of warranty although the cement, due to its inherent nature, produced burns on the buyer who handled it. See also, the discussion in Baker v. Stewart Sand & Material Company, Mo.App., 353 S.W.2d 108 (1961) (negligence case).

5. Compare, for example, Shapiro v. Hotel Statler Corporation, S.D.Cal., 132 F. Supp. 891 (1955) (fish bone in fish food

but was not intended by the manufacturer to be included in the finished product that was sold to the consumer. Here, plaintiff's position is that even though defendant's cigarettes may have conformed to cigarettes generally; even though the cigarettes contained no foreign matter that defendant intended to exclude from its product; even though defendant may have had no reason to suspect that smoking its cigarettes could produce cancer; even though there may have been no immediate harm from smoking a package of cigarettes, but that the smoking-cancer relationship was a cumulative one; and even though *no* developed human skill or foresight could afford knowledge of the cancer-smoking relationship,[6] defendant should be held absolutely liable as an insurer if smoking its cigarettes caused or contributed to cause plaintiff's cancer. No Missouri case has imposed such a strict responsibility upon a manufacturer.

Turning to the controverted instructions themselves, supra, we note that plaintiff objected to the "reasonableness" portion of the charge as well as to the submission of the element of "developed human skill or foresight." In Morrow v. Caloric Appliance Corporation, supra, 372 S.W.2d 41, the Missouri Supreme Court approved the verdict-directing instruction on implied warranty which required the jury, as a prerequisite to a finding for plaintiff, to find the gas range "was not *reasonably* fit and suitable for its intended purpose." The court also emphasized the consumer's dependence "upon processed food and manufactured articles" and the consumer's reliance on "the processor or manufacturer" who holds out such food or articles "to the public as fit and *reasonably* safe." (Emphasis supplied.) 372 S.W.2d at 55.

The foregoing pronouncements are, in our view, sound and fundamental, and indicate persuasively that the instant submission of "reasonableness" is the standard the Missouri courts would adopt and apply under like circumstances.[7]

Focusing our attention next on the foreseeability or scientific knowledge issue, three cases involving similar factual circumstances as the one before us are worthy of brief review even though they were decided under the law of states other than Missouri. In these cases, the instructions on foreseeability and the state of human knowledge were either identical with or similar to the controverted instruction here. In Pritchard v. Liggett & Myers Tobacco Company, supra, 295 F.2d 292 (Pennsylvania law), the Third Circuit reversed the trial court's judgment of dismissal of a warranty count and a directed verdict for

---

serving is not a foreign substance—no implied warranty recovery against restaurant), and Allen v. Grafton, 170 Ohio St. 249, 164 N.E.2d 167 (1960) (piece of oyster shell in serving of oysters—no implied warranty recovery against restaurant), with Bonenberger v. Pittsburgh Mercantile Co., 345 Pa. 559, 28 A.2d 913, 143 A.L.R. 1417 (1942) (oyster shell in canned oysters—submissible implied warranty case made against retailer), and Paolinelli v. Dainty Foods Manufacturers, 322 Ill.App. 586, 54 N.E.2d 759 (1944) (bone in noodle soup mix—negligence recovery from manufacturer).

6. Again, it should be noted that plaintiff did not, in objecting to the given instruction, challenge the *sufficiency of the evidence* to support that portion of the charge regarding scientific knowledge or foreseeability.

7. It is noteworthy that in Green v. American Tobacco Company, 325 F.2d 673 (December 11, 1963), after certification of the foreseeability issue to the Florida Supreme Court, 154 So.2d 169 (1963), the Fifth Circuit, in light of the Florida Court ruling, reversed the position it had taken earlier, 304 F.2d 70, on the foreseeability issue, but the court still asserted that under Florida law a cigarette manufacturer impliedly warrants that its cigarettes are *"reasonably* wholesome or fit for human consumption," and remanded for jury determination on the question of "reasonableness." See also, Lartigue v. R. J. Reynolds Tobacco Company, 5 Cir., 317 F.2d 19 (1963), cert. denied, 375 U.S. 865, 84 S.Ct. 137, 11 L.Ed.2d 92 (1963); Pritchard v. Liggett & Myers Tobacco Company, 3 Cir., 295 F.2d 292 (1961).

defendant as to a negligence count, and remanded for a new trial. Judge Goodrich—although concurring in the decision to reverse and remand the case for submission to the jury—expressed his views as to certain limits beyond which he would be "unwilling to go" in holding a manufacturer liable. He stated:

"If a man buys whiskey and drinks too much of it and gets some liver trouble as a result I do not think the manufacturer is liable unless (1) the manufacturer tells the customer the whiskey will not hurt him or (2) the whiskey is adulterated whiskey—made with methyl alcohol, for instance. The same surely is true of one who churns and sells butter to a customer who should be on a nonfat diet. The same is true, likewise, as to one who roasts and sells salted peanuts to a customer who should be on a no-salt diet. Surely if the butter and the peanuts are pure there is no liability if the cholesterol count rises dangerously.

"In this case there was no claim that [the cigarettes] are not made of commercially satisfactory tobacco." 295 F.2d at 302.

The retrial in Pritchard resulted in a judgment for defendant cigarette company based upon answers to specific interrogatories submitted to the jury, and the case is again on appeal.[8]

In Lartigue v. R. J. Reynolds Tobacco Company, supra, 317 F.2d 19 (Louisiana law), the Fifth Circuit affirmed a judgment rendered on a jury's general verdict for defendant cigarette manufacturers in an action brought for the death of plaintiff's husband—a heavy smoker—from cancer. Approving the instruction that the "implied warranty does not cover substances in the manufactured products, the harmful effects of which no developed

human skill or foresight can afford," the court stated:

"Here the manufacturer 'had no opportunity to gain knowledge, or to form a judgment as to the dangerous qualities of the product'. The manufacturer was in no better position than the consumer.

\*      \*      \*      \*      \*      \*

"Thus far, public policy has not decreed absolute liability for 'the harmful effects of which no developed skill or foresight can avoid.' At this point, it cannot be said that cigarette smokers who started smoking before the great cancer-smoking debate relied on the tobacco companies' 'warranty' that their cigarettes had no carcinogenic element. Today, the manufacturer is not an insurer against the unknowable." 317 F.2d at 39–40.

The proceedings in the third pertinent court of appeals case—Green v. American Tobacco Company, supra, 304 F.2d 70, on statutory certification to the Supreme Court of Florida, supra, 154 So.2d 169, on reconsideration by the Fifth Circuit, supra, 325 F.2d 673 (December 11, 1963) —are relied upon heavily by plaintiff, primarily because of the trial court's reference in the instant case to the first decision rendered by the Fifth Circuit in Green. In an unreported order denying plaintiff's motion for new trial, the court below, applying Missouri law, stated:

"\*   \*   \* when applied to a substance which is a natural constituent of a product, which has not been previously considered harmful, it is the opinion of the Court that the proper rule of law should require that a manufacturer should be shown to have knowledge of the harmfulness of the substance or reason to

8. We have been advised that the jury found that smoking defendant's cigarettes was the cause or one of the causes of the cancer in plaintiff's right lung; that defendant was not chargeable with negligence which was a proximate cause of plaintiff's injury; that defendant did not make any express warranty upon which plaintiff relied and by which he was induced to purchase defendant's cigarettes; that there was not a breach of warranty implied by law; and that plaintiff assumed the risk of injury by his smoking of cigarettes.

have such knowledge imputed to him, and that the rule of absolute liability should be qualified to this extent."

The court then pointed out that, in its view, if this case were presented to the Supreme Court of Missouri, that court would approve of the instruction regarding foreseeability that was given here and in the Green case. But subsequent to this statement, the Florida Supreme Court on statutory certification ruled that under Florida law, "implied warranty liability is not limited by the foreseeability doctrine, the 'reasonable application of human skill and foresight' test of tort liability," [9] supra, 154 So.2d at 172, and consequently the Fifth Circuit has reversed and remanded Green for further proceedings.

However, merely because the court below referred to Green with approval before the Florida Supreme Court responded contrarily in the certification proceeding, we are not compelled to hold that the Missouri Supreme Court would arrive at the same conclusion as the Florida court. Judge Gibson—in the court below—decided that "the better rule of law" was that enunciated in the *first* Green decision by the Fifth Circuit, and that "if the case were presented to the Supreme Court of Missouri, that court would apply the rule followed in the Green case and given to the jury by the instructions of this Court." Judge Gibson did not even imply that the Missouri courts would blindly follow Florida law on this subject—if such law should (as it has) subsequently turn out to be contrary to the first enunciations by the Fifth Circuit. Indeed, as noted previously, this case is to be decided under Missouri law, and neither the Green case, the Lartigue case (which approved a similar instruction as is controverted here), nor the Pritchard case (which also used a similar instruction below and is now again on appeal) is dispositive or decisive of the present controversy.

The field of implied warranty is in a state of flux, and it is obvious that Missouri has joined the liberal trend toward allowing recovery from a manufacturer for breach of such a warranty under factual situations once governed by the rigid *caveat emptor* doctrine—let the buyer beware. However, after exhaustive study of all relevant Missouri authorities, we are convinced that, on the facts of this case, the trial court correctly charged the jury and properly refused plaintiff's instruction which would have made defendant an absolute insurer—without regard to "reasonableness" and without regard to "developed human skill or foresight." [10]

And the burden that the foreseeability instruction placed upon defendant was not a light one. For defendant was required to offer evidence affording proof that *no* one, not even the most renowned scientist or the most eminent medical authority in the world, could have foreseen the cancer-producing danger that

9. For purposes of this opinion, we need not involve ourselves in the controversy concerning whether an implied warranty sounds in contract or in tort as strict liability. See Prosser, Torts, § 83, pp. 493–494 (2d ed. 1955); Prosser, "The Assault Upon the Citadel (Strict Liability to the Consumer)," 69 Yale Law Journal 1099, 1124–1134 (1960). It is, however, interesting to observe that in Morrow v. Caloric Appliance Corp., supra, 372 S.W. 2d 41, 55, the Missouri Supreme Court mentioned and quoted from Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1962), a case which imposed strict liability in *tort* on a manufacturer.

10. It is interesting—although certainly not controlling—to note that Missouri has approved the Uniform Commercial Code as of August 15, 1963, effective July 1, 1965. Under the section of the Code dealing with implied warranty of merchantability, V.A.M.S. § 400.2–314, emphasis is placed upon usage of the trade, and among other requirements, goods to be merchantable must "pass without objection in the trade under the contract description." Plaintiff here does not contend that defendant's cigarettes could not pass without objection in the trade as cigarettes. See also, V.A.M.S. § 400.2–315 (implied warranty of fitness for particular purpose).

smoking cigarettes can—under certain circumstances—apparently create.[11]

While certainly not decisive of Missouri law, it is not entirely without significance that recognized authorities in the field of implied warranty have expressed views which lend support to our determination of the foreseeability issue. In Harper & James, The Law of Torts, Vol. 2, § 28.22, pp. 1584–1586 (1956), the following statement appears:

"Food sold for immediate consumption is warranted as fit for consumption by ordinarily healthy and normal people under ordinary circumstances. This means that it is not contaminated and that it is free from impurities that might *foreseeably* prove injurious, such as pebbles, glass or mice." (Emphasis supplied.) [12]

In the proposed revision of Restatement (2d ed.) Torts, § 402A (Tentative Draft No. 7, 1962), the writer classifies cigarettes with foods for the purpose of imposing strict liability on the manufacturer, but further states:

"The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the consumer. Many products cannot possibly be made safe for consumption, and any food or drug necessarily involves some risk of harm, even if only from over-consumption. * * *

\* \* \* \* \* \*

"Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, *if he has knowledge, or by the application of reasonable developed human skill and foresight should have knowledge,* of the presence of the ingredient and the danger." (Emphasis supplied.)

We have carefully read and studied these and a vast array of other non-judicial authorities—some of which would limit the liability of a cigarette manufacturer for reasons other than are in issue in this case. There is, however, no need for further elaboration, for while these authorities are not without import in the field of implied warranty *generally,* our task here is a more limited one and is confined to the application of Missouri law. Under such law, a manufacturer, in the proper factual situation, is held as an absolute insurer against *knowable* dangers, and thus has an incentive to keep abreast of scientific knowledge.[13]

11. Although no question is raised here as to the measure of damages we note that in an action based upon breach of contract, the traditional Hadley v. Baxendale, 9 Exch. 341, rule limits recovery to such consequences as may be reasonably supposed to be in the contemplation of the parties at the time of making the contract. If an implied warranty under Missouri law sounds strictly in contract (but see, supra, fn. 9), a plaintiff seeking to recover from a manufacturer of cigarettes alleging that smoking caused plaintiff's cancer, might still be required to show that the possibility of such a consequence might reasonably be supposed to have been within the "contemplation" of the parties at the time of the sale.

12. See also, "General Products—Should Manufacturers Be Liable Without Negligence?", 24 Tenn.L.Rev. 923, 925, 927

(1957), an article by Fleming James (co-author of The Law of Torts, Harper & James, and Professor of Law at Yale Law School) in which he argued for an extension of liability without fault but concluded that the liability of a manufacturer should—as to hazards injected into society by the manufacturer—be limited to the extent that such hazards are "reasonably foreseeable." "Liability should extend to anyone who is hurt by a foreseeable use of the product. The foreseeability here involved is different from that required in negligence cases. It is not the foreseeability of unreasonable risks, but rather the foreseeability of the kinds of risks which the enterprise is likely to create."

13. Even in a negligence case, a manufacturer is held to the skill of an expert, is charged with superior knowledge of the nature and qualities of its products, and

**14**

But, in our view, the Missouri courts would not—under the facts of this case—go still further and eliminate knowledge altogether as a condition of liability, regardless, for example, of whether any ingredient in a cigarette was known or could have been known to be an irritant or deleterious substance that could cause cancer.

In summary, we are satisfied that the trial court properly determined the applicable Missouri law and that its charge was correct. In any event, the court's conclusion was a permissible one and is invulnerable to successful attack on appeal.

■ We approach the question whether the exclusion of evidence offered by plaintiff was prejudicial error, mindful that under Rule 61, Fed.R.Civ.P., no error in the admission or exclusion of evidence is ground for granting a new trial or for vacating a judgment, unless a refusal to do so is inconsistent with substantial justice. See Great American Insurance Company v. Horab, 8 Cir., 309 F.2d 262 (1962). In Hawkins v. Missouri Pac. R. Co., 8 Cir., 188 F.2d 348, 351–352 (1951), in speaking for the court, Judge Johnsen, now Chief Judge, stated the applicable rule in this manner:

"* * * [T]he admission or exclusion of any evidence, as being properly relevant or being too remote, is in the federal courts a matter primarily for the trial court's judgment, and its rulings in this respect will not be disturbed except for clear and prejudicial abuse of the discretion."

Proceeding to the question, we find that in 1942 a complaint was filed before the Federal Trade Commission which apparently formed the basis for an investigation by that Commission of defendant's dissemination of certain advertising of its cigarettes. On February 2, 1959, defendant filed before the Federal Trade Commission its motion to dismiss that

is obligated reasonably to keep abreast of scientific information, discoveries, and advances. LaPlant v. E. I. Dupont De

case. The supporting affidavit of defendant's president stated:

"The respondent has abandoned its advertising that the smoke from its 'Philip Morris' brand of cigarettes is less irritating to the throat than the smoke from cigarettes of the other leading brands. It has also abandoned the use of the hygroscopic agent mentioned in the said order and which was the basis of the said advertising. It has also abandoned any advertising representing that the smoke from its said cigarettes will not leave an after-taste.

"It is not the intention of respondent to resume said advertising or the use of the said hygroscopic agent."

Plaintiff sought unsuccessfully to introduce the motion to dismiss and supporting affidavit in effect as admissions against interest.

Additionally, plaintiff offered, again basically as admissions against interest, the testimony of defendant's former Director of Research (dead at the time of this trial) adduced in 1943 in the same proceeding before the Federal Trade Commission. In denying both offers—i. e., the motion to dismiss the Federal Trade Commission complaint and the testimony of the Director of Research, the trial court expressed the opinion that such evidence did not constitute admissions against interest and was not relevant to establish any pertinent fact.

■ In taking issue with the trial court's exclusion of the offered evidence, plaintiff relies upon the general rule, undisputed here, that any statement made by a party to an action which is against his own interest and which in its nature tends to establish or disprove any material fact in the case is competent to be put in evidence against him in the trial of the action. 31A C.J.S. Evidence § 272; 20 Am.Jur., Evidence § 544. Under

Nemours And Company, Mo.App., 346 S.W.2d 231 (1961).

this principle, an admission in a pleading in one action may be received in evidence against the pleader on the trial of another action to which he is a party, in favor of a party to the latter action, provided the admission is relevant and material to the issues being litigated. See 31A C.J.S. Evidence § 303; 20 Am. Jur., Evidence § 630; cf. Albertson v. Wabash R. Co., 363 Mo. 696, 253 S.W.2d 184 (1952).

The difficulty and weakness of plaintiff's position is that the excluded evidence does not, in our considered view, meet the test encompassed within the foregoing rule. We are unable to comprehend how the statement in the motion to dismiss the Federal Trade Commission proceedings to the effect that defendant intended to abandon portions of its advertisements and to abandon the use of the hygroscopic agent in the manufacture of its cigarettes, constituted an admission, or could have been so regarded, that its product was not reasonably wholesome or fit, or that defendant had been guilty of the alleged negligence in the manufacture of its cigarettes.[14] The refused testimony of its former Research Director, when considered in light of the issues that were litigated, falls in the same category.

The materiality and admissibility of all of the refused evidence was first the subject of exhaustive pre-trial consideration during the time that the case was pending before Judge Ridge (now a member of this Court). After thorough analysis of plaintiff's contentions, Judge Ridge ruled that the proceedings before the Federal Trade Commission and the questioned evidence were not admissible. But in so doing, the court did not foreclose plaintiff's right to offer evidence if it was in fact relevant to establish a material fact or constituted an admission against interest.[15] During the trial the same evidence was again offered, was carefully examined by Judge Gibson who, after a plenary hearing on the question of its admissibility, ruled that it was not material, did not constitute an admission against interest, and refused to allow its introduction.

Plaintiff was permitted to introduce numerous advertisements promulgated by defendant and which appeared in national magazines, newspapers and other advertising media during the period of time relevant to the case. The evidence took a wide range and afforded the jury a panoramic view of the litigated issues. The admission of the controverted evidence would not, in our opinion, have influenced or caused the jury to arrive at a different result. Its rejection was not prejudicially erroneous, and manifestly there is no basis for us to hold that the

14. Compare, Albertson v. Wabash R. Co., supra, 253 S.W.2d 184 (although not controlling in a federal court action involving a question of admissibility of evidence), where the Missouri Supreme Court held it was prejudicial error to admit application filed by the railroad company before Public Service Commission for permission to eliminate an existing grade crossing, characterized in the application as "dangerous." The action was brought against the railroad company for damage resulting from collision between an automobile and a standing railroad car at that same crossing, claimed by plaintiff to be "unusually hazardous."

15. The pre-trial proceedings indicate clearly that plaintiff's purpose at that time in securing a favorable ruling on the admissibility of the controverted evidence was to establish his fraud and deceit action— Count III. In its memorandum opinion granting summary judgment on Count III, the court stated:

"Seemingly, what plaintiff is attempting in this case is to get before the jury at the trial, as primary evidence, excerpts from the pleadings and record made before the F.T.C., as proof to sustain the charge of fraud and deceit which he alleges in Count III. * * *

"Plaintiff cannot in this action use as primary evidence, the 'Specific Admissions Against Interest by Defendant and Its Officers, Contained in Plaintiff's Exhibits 9, 10, 11, 12 and 13, Record Before the Federal Trade Commission, Docket No. 4794,' (filed herein December 10, 1960) in proof of the claim of fraud and deceit made in Count III."

court's ruling constituted a clear abuse of discretion.

The record demonstrates that the case was fairly tried, free of prejudicial error. Consequently, we

Affirm.